IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:22-cv-630-MOC-DSC

| | |
|---|---|
| SARA BETH WILLIAMS, BRUCE KANE, JASON YEPKO, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, GRASS ROOTS NORTH CAROLINA, and RIGHTS WATCH INTERNATIONAL,<br><br>         Plaintiffs,<br><br>v.<br><br>SHERIFF GARRY MCFADDEN, in his official capacity as Sheriff of Mecklenburg County, and the MECKLENBURG COUNTY SHERIFF'S OFFICE<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS** |

## I.    **INTRODUCTION**

Plaintiffs' Complaint for declaratory and injunctive relief asserts various constitutional challenges to unspecified North Carolina statutes and Sheriff McFadden's and Mecklenburg County Sheriff's Office's ("MCSO") Concealed Handgun Permit ("CHP") permitting process. [ECF No. 1]. Sheriff McFadden, like

1

WBD (US) 60381526v1

all North Carolina sheriffs, is responsible for administering the gun permitting process, including applications for CHPs. See N.C.G.S. §§ 14-402- 415.27.

The seven Plaintiffs are three individuals: 1) Sara Beth Williams ("Williams"); 2) Bruce Kane ("Kane"); and 3) Jason Yepko ("Yepko") (collectively the "Applicants"); and four organizations: 1) Gun Owners of America, Inc.; 2) Gun Owners Foundation; 3) Grass Roots North Carolina; and 4) Rights Watch International (collectively the "Organizations"). [ECF No. 1.]

Plaintiffs have asserted the following causes of action against both Defendants:

Count I:     Violation of the Second Amendment [ECF No. 1, ¶¶ 96-103];

Count II:     Violation of 42 U.S.C. § 1983, Second Amendment, *id*. at ¶¶ 104-109;

Count III:     Violation of 42 U.S.C. § 1983, Fourteenth Amendment Due Process, *id*. at ¶¶ 110-116; and

Count IV:     Violation of 42 U.S.C. § 1983, Fourteenth Amendment Equal Protection, *id*. at ¶¶ 117-126.

The injunctive relief sought by Plaintiffs should be dismissed pursuant to Federal Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs' Complaint should also be dismissed for failure to state a claim upon which relief can be granted because the North Carolina statutory scheme is facially constitutional under *New*

2

*York State Rifle and Pistol Ass'n, Inc v. Bruen*, - U.S.-, 142 S.Ct. 2111 (2022), and constitutional as applied by Defendants in this case. The Section 1983 claims alleging Second Amendment, Fourteenth Amendment Due Process and Equal Protection violations are duplicative of Plaintiffs' Second Amendment challenge.

## II.    STATEMENT OF FACTS

### A. THE NORTH CAROLINA STATUTORY SCHEME

Any person in North Carolina with a valid CHP issued by his or her local Sheriff may carry a concealed handgun. N.C.G.S. § 14-415.11. North Carolina is a "shall issue" state, meaning that Defendants do not have discretion to deny a CHP if the CHP applicant meets certain criteria. N.C.G.S. § 14-415.12. An applicant must submit an application[1], a nonrefundable permit fee of $90.00, a fee of $10.00 for fingerprinting (and submit to fingerprinting by the Sheriff), a certificate of completion of an approved course for handgun competency, and a release authorizing disclosure of any records concerning the "mental health or capacity"[2] of the applicant to determine whether s/he is disqualified from receiving a permit under N.C.G.S. § 14-415.12(a)(3). N.C.G.S. § 14-415.13(a)(5).

After the applicant submits the items listed in N.C.G.S § 14-415.13, the Sheriff is authorized to "conduct *any investigation necessary* to determine the

---

[1] This application is created by the North Carolina State Bureau of Investigation. [ECF No. 14-2, p. 3; ECF No. 14-3, pp. 2-4].
[2] [ECF No. 14-2, p. 3; ECF No. 14-4, p. 2].

3

qualification or competency of the person applying for the permit." N.C.G.S. § 14-415.15(a) (emphasis added). Within ten days of the receipt of the items listed in N.C.G.S. § 14-415.13, the "sheriff *shall* make the request for any records concerning the mental health or capacity of the applicant." N.C.G.S. § 14-415.15(a) (emphasis added). N.C.G.S. § 14-415.15(a) further provides that "within 45 days of the receipt of the items listed in G.S. 14-415.13 from an applicant, and receipt of the required records concerning the mental health or capacity of the applicant, the sheriff shall either issue or deny the permit." N.C.G.S. § 14-415.15(a). Once Defendants request an applicant's mental health records, control of the process shifts to the mental health providers while Defendants await production of the records. The Sheriff cannot control how long it may take any given mental health provider to return the requested records, but so long as the Sheriff issues or denies the CHP within forty-five days of receiving those records, the Sheriff is in compliance with the law. N.C.G.S. § 14-415.15(a).

While Plaintiffs allege that "certain portions of N.C.G.S. § 14-415.13 through N.C.G.S. § 14-415.15" (which they refer to as the "Mental Health Provisions" ("MHP")) are unconstitutional, they do not specify which "certain portions" of the MHP they are seeking to have declared unconstitutional. [ECF No. 1, p. 2]. Plaintiffs also contend that Defendants' request for mental health records pursuant to N.C.G.S. §§ 14-415.12 causes an unnecessary and long delay for CHP applicants

4

which constitutes an infringement on Plaintiffs' Second Amendment rights. [ECF No. 1.]

## B. <u>THE APPLICANTS HAVE APPLIED FOR AND RECEIVED CHP PERMITS</u>

Williams' application for a CHP was completed on February 23, 2022 [ECF No. 1, p. 5], and after receipt of her mental health records, her permit was approved on November 18, 2022. [ECF No. 14-2, p. 5].[3] Kane sought renewal of his CHP on July 11, 2022 [ECF No. 1, p. 5], and his renewal application was approved on January 6, 2023. [ECF No. 14-2, p. 5]. Yepko sought renewal of his CHP in October 2021, filled out the proper forms by March 2022 [ECF No. 1, p. 5], and his renewal application was approved on November 16, 2022. [ECF No. 14-2, p. 5].

## III. <u>ARGUMENT</u>

### A. <u>THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE INJUNCTIVE RELIEF CLAIMS</u>

In their Complaint, Plaintiffs seek an injunction against Sheriff McFadden "from impermissibly delaying the processing and issuance of concealed handgun permits." [ECF No. 1, p. 37]. Plaintiffs' claim for injunctive relief must be dismissed without prejudice for mootness and lack of jurisdiction.

The concept of mootness is rooted in Article III of the United States Constitution, which limits the jurisdiction of the federal courts to "cases and

---

[3] As Defendants are moving to dismiss this Complaint for lack of subject matter jurisdiction, this Court may consider evidence outside the pleadings. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

5

controversies." U.S. Const., Art. III, § 2.  In order to avoid mootness, Plaintiffs must demonstrate that: (1) they have suffered an injury in fact that is concrete, particularized, and imminent; (2) that injury is fairly traceable to, or caused by, the challenged action of defendants; and (3) it is likely, rather than conjectural, that the injury will be redressed by a favorable decision. *See generally, Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–81, 120 S.Ct. 693, 704 (2000).  Plaintiffs whose claims are moot lack standing, and those moot claims should therefore be dismissed for lack of subject matter jurisdiction.  *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citations omitted), or, in other words, when the court's "resolution of an issue could not possibly have any practical effect on the outcome of the matter." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010).  A claim for injunctive relief is moot "when there is no effective relief available in federal court that the plaintiff has not already received."  *SAS Inst., Inc. v. World Programming Limited*, 874 F.3d 370, 389 (4th Cir. 2017) (quotations omitted). In this case, Plaintiffs cannot carry their burden of proving that subject matter jurisdiction exists because the Applicants have received their CHPs. *Piney*

6

*Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md*., 523 F.3d 453, 459 (4th Cir. 2008).

In *Stafford v. Baker*, 520 F.Supp.3d. 803 (E.D.N.C. 2021), the Honorable Louise Flanagan addressed a similar issue. Individual and Organizational Plaintiffs sued Wake County Sheriff Gerald Baker and sought an injunction against him "prohibiting the current practices of failing or refusing to accept or process new PPP [Pistol Purchase Permit] applications, with such directions and orders as are necessary to effectively compel the immediate resumption of accepting and processing PPP applications in accordance with the procedures established under N.C.G.S. § 14-402 et seq." *Id*. at 813. The Court held that since one individual Plaintiff was able to apply for a PPP, and the other individual Plaintiff already obtained a PPP, their injunctive relief claims were moot because the relief sought in their injunctive relief claim was already obtained. *Id*. at 813-814. Since the injunctive relief claims of the individual Plaintiffs were mooted, the Court also dismissed the organizational Plaintiffs claim based on lack of standing. *Id*. at 814.

In this case, the Applicants' injunctive relief claims are moot because they have already obtained their CHPs. *See e.g., SAS Inst., Inc*., 874 F.3d at 389 ("A claim for injunctive relief is moot when there is no effective relief available in federal court that the plaintiff has not already received"). As the Applicants' lack standing to bring their injunctive relief claim, the Organizations' injunctive relief

7

claim should also dismissed without prejudice for lack of jurisdiction. *See Stafford*, 520 F. Supp. 3d at 813.

### B. THE COMPLAINT FAILS TO STATE A CLAIM UPON WICH RELIEF CAN BE GRANTED

#### 1. MCSO IS  A NON-SUABLE ENTITY

In addition to suing Sheriff McFadden, the Plaintiffs make claims against MSCO.  However, MCSO is a non-suable entity, and MCSO should therefore be dismissed from this Complaint. In North Carolina, it is well established that "unless a statute provides to the contrary, only persons in being may be sued.  [citations]." *Coleman v. Cooper*, 89 N. C. App. 188, 192, 366 S.E.2d 2, 5 (1988) (a police department is a non-suable entity given the absence of any statute "authorizing suit against the police department").  There is no statute authorizing suit against a county Sheriff's Office, and therefore Plaintiffs cannot proceed against MCSO.  *Parker v. Bladen County*, 583 F.Supp.2d 736, 740 (E.D.N.C. 2008) (Bladen County Sheriff's Office is a nonsuable entity); *Efird v. Riley*, 342 F.Supp.2d 413, 420 (W.D.N.C. 2004) (dismissing claims against county sheriff's department for lack of capacity to be sued.); *Landry v. State of North Carolina et. al*, 2011 WL 3682788 at * 2 (W.D.N.C. 2011) (unpublished) (MCSO is not a legal entity capable of being sued).

WBD (US) 60381526v1

## 2. PLAINTIFFS' SECOND AMENDMENT VIOLATION CLAIM SHOULD BE DISMISSED

Plaintiffs claim that the MHP and Sheriff McFadden's request for mental health records pursuant to the MHP violate the Second Amendment because they infringe upon the right of Plaintiffs to bear arms. [ECF No. 1, ¶¶ 97-103]. Whether couched as a facial challenge to the MHP or an as-applied challenge, Plaintiffs' Second Amendment claim has no merit.

To succeed in a facial constitutional challenge, Plaintiffs "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016) (*quoting United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). The statutes Plaintiffs claim violate the Second Amendment appear[4] to be 1) the provision in N.C.G.S. § 14-415.13(a)(5) which requires a release authorizing disclosure of any records concerning the "mental health or capacity" of the applicant to determine whether s/he is disqualified from receiving a permit under N.C.G.S. § 14-415.12(a)(3); and 2) the provision in N.C.G.S. § 14-415.15(a) which requires the Sheriff to make "the request for any records concerning the mental health or capacity of an applicant."

---

[4] Plaintiffs do not allege which statutes are unconstitutional but only claim that "certain portions" of N.C.G.S. § 14-415.13 through 14-14.15.15 are unconstitutional. [ECF No. 1, ¶ 1].

9

While Plaintiffs rely heavily on *Bruen* in their Second Amendment claim, [ECF No. 1, ¶¶ 99, 102], *Bruen* actually mandates dismissal of a facial challenge to the MHP.  In *Bruen*, the Supreme Court struck down New York State's "proper cause" statute for concealed carry permits.  *Bruen*, 142 S.Ct. at 2122.  In so doing, the Supreme Court held that "[t]o justify its regulation [of firearms], the government may not simply posit that the regulation promotes an important interest.  Rather the government must demonstrate that the regulation is consistent with this Nation's historical treatment of firearm regulation."  *Id*. at 2126.  The question before this Court, then, is whether North Carolina's regulations requiring applicants to be mentally capable of safely handling a handgun is consistent with the United States' historical treatment.  Indeed, there can be no question that it is.

In  *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), the Supreme Court held that while the Second Amendment conferred upon an individual the right to keep and bear arms in the home, it emphasized that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."  *Id*. at 626, 128 S.Ct. at 2816-2817. Following *Heller*, in *McDonald v. Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 3047 (2010), the Supreme Court reiterated the proposition that legislation prohibiting mentally ill individuals from carrying firearms was constitutional:

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of

firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at 626 – 627, 128 S.Ct., at 2816–2817. We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.

*Bruen* reinforced the notion that it is constitutionally permissible for legislation to require a determination of whether someone is mentally capable of handling a firearm. That is exactly what the MHP do. In the first sentence of footnote 9, the Supreme Court's majority opinion in *Bruen* made it clear that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall- issue" licensing schemes…." 142 S.Ct. at 2138 n. 9. North Carolina is a "shall-issue" state. N.C.G.S. § 14-415.12. In Justice Kavanaugh's concurring opinion in *Bruen*, in which Chief Justice Roberts joined, he repeated the same refrain Justices Scalia and Alito set forth in *Heller* and *McDonald*: "[n]othing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill...." *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J., concurring) (internal citations omitted). Justice Kavanaugh also stated "shall-issue regimes" that "do not grant open-ended discretion to licensing officials and do not require a showing of some special need apart from self-defense" are "constitutionally permissible," even if they require an individual to "undergo fingerprinting, a background check, a *mental health records check*, and training in

11

firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 2162 (Kavanaugh, J., concurring) (emphasis added). The MHP in North Carolina's statutes simply require every Sheriff's Office to determine whether someone is mentally ill and thus cannot safely handle a handgun, a proposition which the United States Supreme Court has repeatedly recognized is consistent with this country's historical tradition. *See e.g. Doe v Bonta*, 2023 WL 187574 at *5 (S.D. Cal. 2023) (reiterating that *Bruen* "didn't undo all preexisting gun regulations" and that "[l]icensing requirements, fingerprinting, background checks, and mandatory gun safety training courses" are legitimate and common regulations).

Plaintiffs' as-applied challenge to the MHP also fails. To prevail on an as-applied challenge, Plaintiffs "must show that the regulations are unconstitutional as applied to their particular…activity." *Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C.Cir. 2014). The substantive rule of law is the same for both a facial and as-applied challenge. *Id.*

In making the as-applied challenge, Plaintiffs rely on the final sentence of footnote 9 in *Bruen* which states that " … because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." 142 S.Ct. at 2138

WBD (US) 60381526v1

n. 9. Plaintiffs contend that Defendants' request for Veterans Administration and other mental health records improperly causes a delay in processing CHP applications, thereby causing Second Amendment violations. [ECF No. 1, ¶¶ 20, 82]. Plaintiffs' as-applied challenge misses the target for several reasons.

Plaintiffs do not raise a "may issue" or "proper cause" question as was considered in *Bruen*. Plaintiffs ignore the distinction between "public carry," "open carry," and "concealed carry." Public carry refers to the notion of possessing a handgun in a public place. Public carry is simply an umbrella term under which open carry and concealed carry both fall. The last sentence in footnote 9 in *Bruen* only cautions against extreme delays and exorbitant fees that could, in effect, place an unconstitutional burden on public carry. But according to *Bruen*, as no permit is required for open carry in North Carolina, Plaintiffs Second Amendment right to public carry is not infringed by N.C. G.S. § 14-415.15(a).

Plaintiffs contend that since the FBI's National Instant Criminal Background Check System ("NICS") already provides information regarding mental health adjudications, there is no reason for the Defendants to request mental health records from the VA and other mental health providers. [ECF No. 1, ¶¶ 42-47, 80]. In essence, Plaintiffs contend that there is no point in requesting mental health records beyond what is provided by NICS. However, as Plaintiffs recognize, as far as mental health issues are concerned, NICS only provides information regarding mental

13

health adjudications. [ECF No. 1, ¶¶ 44-45]. In addition to using NICS to review an applicant's criminal history, Defendants' NICS inquiry is partially relevant to the mandate in N.C.G.S. § 14-415.12 (b) (6) which states that a Sheriff shall deny a permit to someone who "is currently, or has been previously adjudicated by a court or administratively determined by a government agency whose decisions are subject to judicial review to be, lacking mental capacity or mentally ill." However, Plaintiffs ignore that North Carolina Sheriffs are also required to determine that an "applicant does not suffer from a physical or mental infirmity that prevents the safe handling of a handgun." N.C.G.S. § 14-415.12(a)(3). *See In Re Bezanson*, 272 N.C. App. 446 at ** 2-3, 843 S.E.2d. 730 (table) (2020) (recognizing the distinction between a disqualification for mental health adjudications under N.C.G.S. § 14-415.12(b)(6) and a disqualification for suffering from a physical or mental infirmity preventing the safe handling of a firearm under N.C.G.S. § 14-415.12(a)(3)). An applicant never adjudicated mentally ill might still have visited a mental health facility for any number of reasons, and information from such a visit or visits may lead a Sheriff to conclude that the applicant suffers "from a physical or mental infirmity that prevents the safe handling of a handgun." *See e.g., Cale v. Atkinson*, 268 N.C. App. 466 at *4, 834 S.E.2d. 454 (table) (2019) (upholding Sheriff's denial of permit based upon applicant suffering from "physical or mental infirmity" based upon mental health records from twenty years earlier).

14

Plaintiffs contend there is no point in requesting records from the VA for individuals who claim they never served in the military. [ECF No. 1, ¶ 81]. While Defendants inquire of all CHP applicants whether they have served in the military, an important reason justifies Defendants' request for VA records notwithstanding a negative reply about military service. Some applicants inaccurately or mistakenly (if not untruthfully) answer the question about military service. Other applicants may answer this question truthfully and still, perhaps unintentionally, provide a misleading answer. The applicant only has to answer under oath whether they "[h]ave…been discharged from the U.S. Armed Forces under conditions other than honorable." [ECF No. 14-3, pp. 3-4]. An applicant who served in the military but was honorably discharged would answer this question "no." The same applicant, however, may well have received treatment from the VA. N.C.G.S. § 14-415.15(a) states that "the sheriff may conduct any investigation necessary to determine the qualification or competency of the person applying for the permit, including record checks." Given the reality – that CHP applicants may incorrectly (intentionally or otherwise) indicate never having served in the military, or that they may not have "been discharged…under conditions other than honorable" – Defendants' request for VA mental health records for all CHP applicants is certainly reasonable.

Notably, Plaintiffs make no allegations that Defendants are somehow responsible for the delays in the mental health providers' response to record requests,

or have violated 1) the ten-day deadline for submitting requests for mental health records; or 2) the forty-five-day deadline related to issuance or denial of a permit after all mental health records are received. While there are allegations that that Applicants applied for CHPs on certain dates, [ECF No. 1, ¶¶ 7-9], the time within which to process CHP applications does not begin to run at that time. N.C.G.S. § 14-415(a) clearly states that "*within 45 days after* receipt of the items listed in GS 14-415.13 from an applicant, and *receipt of the required records concerning the mental health or capacity of the applicant*, the sheriff shall either issue or deny the permit." (emphasis added). In fact, the most striking flaw in Plaintiffs' Complaint is the contention that once an applicant completes the CHP application, that applicant should have a decision on his or her permit within forty-five days. In their prayer for relief, Plaintiffs demand that the Court order "Sheriff McFadden to, in every case, issue or deny Concealed Handgun Permits within the statutory timeframe of 45 days of receipt of an application." [ECF No., 1, p. 38]. To suggest that Defendants must issue or deny a CHP within forty-five days of receiving an application misstates the law. The forty-five-day period starts to run upon completion of a CHP application and "receipt of the required records concerning the mental health or capacity of the applicant." N.C.G.S. § 14-415.15(a).

*Bruen* does not stand for the proposition that any delay in obtaining a CHP is unconstitutional; certainly not a "delay" caused by the time it may take a mental

WBD (US) 60381526v1

health provider to produce its records, a delay which is completely out of the Sheriff's control. Since *Bruen*, one district court in New York held that *Bruen's* "lengthy wait times" dicta in footnote 9 might apply in a situation where an applicant cannot obtain an available appointment in order to submit an application for over a year. *See Antonyuk v. Hochul*, -- F. Supp.3d --, 2022 WL 16744700 at * 11 (N.D.N.Y. 2022). The individual Plaintiffs in this case have all had their CHP applications approved between six and nine months after completing their application[5] (less than six months for Kane, [ECF No. 1, p. 5; ECF No. 14-2, p. 5]; less than nine months for Yepko and Williams, [ECF No. 1, p. 5; ECF No. 14-2, p. 5]). Any delay they had in receiving their CHPs does not implicate footnote 9 in *Bruen*. Under these facts, Plaintiffs' Second Amendment rights were not infringed upon by Defendants' lawful enforcement of N.C.G.S. § 14-415.15(a).

### 3. <u>**PLAINTIFFS' SECOND, THIRD, AND FOURTH COUNTS SHOULD BE DISMISSED**</u>

In addition to alleging that their Second Amendment rights have been violated, Plaintiffs contend that Defendants are liable under 42 U.S.C. § 1983 for violation of the Second Amendment and the Fourteenth Amendment Due Process and Equal Protection provisions. [ECF No. 1, ¶¶ 104-126]. These claims fall for the

---

[5] The statute does not run upon the application being completed but only when the mental records are provided. N.C.G.S. § 14-415.15(a).

WBD (US) 60381526v1

same reason that Plaintiffs' Second Amendment rights claim fails- the MHP are constitutional on their face and as applied. These claims also fail for several additional reasons.

As Plaintiffs' Section 1983 claims all seek the same relief as their Second Amendment claim – a declaration that the MHP are unconstitutional and that Defendants are violating their rights by delaying the issuance of the CHP permits – all section 1983 claims should be dismissed because they are duplicative of Plaintiffs' Second Amendment claim. *See Clifton v. United States Department of Justice*, 2022 WL 2791355 at * 13 (E.D. Cal. 2022) (as the relief plaintiff seeks in both his Second Amendment and substantive due process claims is the same- a permanent injunction prohibiting defendants from enforcing 18 U.S.C. § 922(g)(4) against him- the court grants defendants' motion to the extent it seeks dismissal of plaintiff's substantive due process claim.); *Clark v. City of Shawnee*, 228 F. Supp. 3d 1210, 1223 (D. Kan. 2017) (rejecting the plaintiff's due process claim that a city's firearm licensing process burdened him because the claim was "no more than an indirect and duplicative Second Amendment challenge").

In addition, Section 1983 "is not itself a source of substantive rights," but provides litigants with means through which to vindicate "federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3 (1979). In considering a Section 1983 claim, the court must first identify the specific

18

constitutional right purportedly infringed. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870 (1989). Where another provision of the Constitution "provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293, 119 S.Ct. 1292, 1296 (1999) (internal quotation marks omitted); *see also Henderson Amusement, Inc. v. Good*, 172 F.Supp.2d 751, 755.n. 4 (W.D.N.C.2001), *aff'd*, 59 Fed.Appx. 536 (4th Cir.2003), *abrogation on different grounds recognized*, *Gantt v. Whitaker*, 203 F.Supp.2d 503 (M.D.N.C.2002).   As the alleged deprivation of Plaintiffs' substantive due process rights clearly implicates rights conferred by the Second Amendment, Plaintiffs' substantive due process claim should be dismissed as duplicative.  *Marszalek v. Kelly*, 2022 WL 225882 at * 7 (N.D. Ill. 2022) ("The alleged deprivation of Plaintiffs' right to possess and use firearms due to Defendants' processing delays clearly implicates the rights conferred by the Second Amendment, and thus, this Court dismisses Plaintiffs' substantive due process theory as duplicative of their Second Amendment claim.").  *See also Johnson v. Lyon,* 406 F. Supp. 3d 651, 671 (W.D. Mich. 2018) (holding that despite the plaintiff's attempts to bring a due process claim, allegations that the State violated the plaintiff's right to armed self-defense must be assessed under the Second Amendment, not the Fourteenth Amendment); *Second Amend. Arms v. City of Chicago*, 135 F. Supp. 3d

WBD (US) 60381526v1

743, 763 (N.D. Ill. 2015) (analyzing the plaintiff's claims that an ordinance impaired his fundamental right to sell firearms through retail sales, and to display those firearms and ammunition for sale, under the First and Second Amendments, rather than under the due process clause of the Fourteenth Amendment).

Plaintiffs' section 1983 Equal Protection claim is premised on the argument that the MHP "have been enforced with significant inequality across various North Carolina counties" and "law-abiding residents of some counties" are treated differently as a result. [ECF No. 1, ¶¶ 119-120] These allegations do not state an Equal Protection claim. To succeed on an Equal Protection claim under § 1983, Plaintiffs must show that they have been treated differently from others with whom they are similarly situated and that the unequal treatment was the result of intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Courts have routinely rejected claims that procedures used by different counties within a state violate the Equal Protection rights of citizens. *See Wexler v. Anderson*, 452 F.3d 1226, 1231–33 (11th Cir. 2006) (recognizing that equal protection is not violated by letting different counties use different voting systems); *Donald J. Trump for President, Inc. v. Boockvar*, 493 F.Supp.3d 331, 407 (W.D. Penn. 2022) (rejecting Equal Protection claim in voting case alleging that some counties did not verify signatures on ballots where voters were allegedly treated differently simply based on county of residence); *Jones v. Board of County Commissioners of Douglas*

20

*County, Kansas*, 2020 WL 6134261 at * 3 (D. Kansas 2020) ("[b]etter treatment of inmates in different counties does not amount to an equal protection violation by Douglas County authorities.") Moreover, Plaintiffs do not allege, as they must, that that they were treated differently than other claimants based on constitutionally-impermissible criteria. *Tri-County Paving, Inc., v. Ashe County*, 281 F.3d 430-439-440 (4th Cir.2002) (where county's decision to deny plaintiff's application to operate asphalt plant not based on race or other protected factor, equal protection claim properly dismissed).

## IV.   CONCLUSION

As the United States Supreme Court has recognized in *Heller*, *McDonald*, and *Bruen*, determining whether someone who is mentally ill can possess a firearm is consistent with this Country's historical tradition.  Defendants therefore request that this Court dismiss Plaintiffs' Complaint and allow them to pursue the changes they want via the legislative route.

WBD (US) 60381526v1

Respectfully submitted this 6TH day of February, 2023.

/s/*Sean F. Perrin*

Sean F. Perrin
N.C. State Bar No. 22253
Alexander J. Buckley
N.C. State Bar No. 53403
WOMBLE BOND DICKINSON (US) LLP
301 South College Street, Suite 3500
Charlotte, North Carolina  28202-6037


/s/*J. George Guise*

J. George Guise
N.C. State Bar No. 22090
Mecklenburg County Sheriff's Office
801 East Fourth St.
Charlotte, North Carolina  28202

*Attorneys for Defendants Sheriff Garry*
*McFadden and Mecklenburg County*
*Sheriff's Office*

22