IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:22-cv-630-MOC-DSC

| | |
|---|---|
| SARA BETH WILLIAMS, BRUCE KANE, JASON YEPKO, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, GRASS ROOTS NORTH CAROLINA, and RIGHTS WATCH INTERNATIONAL, <br><br> Plaintiffs, <br><br> v. <br><br> SHERIFF GARRY MCFADDEN, in his official capacity as Sheriff of Mecklenburg County, and the MECKLENBURG COUNTY SHERIFF'S OFFICE, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Seeking dismissal of Plaintiffs' Complaint, which challenges the constitutionality of statutory language along with Defendants' resulting abuses, which together have caused exorbitant concealed carry licensing delays repugnant to the original public understanding of the Second Amendment, Defendants, *inter alia*, make questionable legal arguments, offer red herrings, and repeatedly misuse their motion to make merits arguments that should have been included in response to Plaintiffs' Motion for Preliminary Injunction, or included in a motion for summary judgment. For the reasons below, this Court should deny Defendants' motion to dismiss.

1

## I. PLAINTIFFS HAVE CLEARLY IDENTIFIED THE CHALLENGED STATUTORY PROVISIONS.

As Plaintiffs noted in their Complaint, several scattered provisions of the North Carolina General Statutes collectively enable Defendants to prolong concealed handgun licensing wait times indefinitely. ECF #1, ¶¶ 56, 58, 61–63 (discussing the operation of N.C.G.S. §§ 14-415.13(a)(5), 14-415.15(a)); *see also* ECF #17 (hereinafter "Motion"), at 9 (correctly identifying these "Mental Health Provisions" after claiming ambiguity at 1, 4, 9). It is these subsections that enable Defendant McFadden to engage in a boundless inquiry by authorizing him to: (i) request mental health records altogether (§ 14-415.13(a)(5)), (ii) upon receipt of application materials, stall for 10 days before requesting mental health records (§ 14-415.15(a)), and (iii) impose an indefinite waiting period pending receipt of mental health records, if any, from a boundless number of potential federal and state entities and agencies (§ 14-415.15(a)). Plaintiffs have urged this Court to strike these provisions as violative of Second Amendment rights and to enjoin Defendants' continued infringement of those rights. ECF #1, at 38.

## II. DEFENDANTS' MOOTNESS ARGUMENT FALLS FLAT.

Defendants claim that, because Plaintiffs Williams, Kane, and Yepko have had their CHP applications approved[1] during the pendency of this litigation, there is no longer a live case or controversy, their claims are moot, and this Court consequently lacks subject matter jurisdiction

---

[1] Defendants misconstrue *when* Plaintiffs actually applied for CHPs—because of Defendant McFadden's refusal to fingerprint, Plaintiff Williams' November 9, 2021 application was not considered "complete" (by the Sheriff) until February 23, 2022, when Defendants finally agreed to fingerprint her. ECF #1, ¶ 7. In reality, her application languished for more than *one year* before she finally received her permit. *See id.*; Motion at 5. As explained in the Supplemental Declaration of Paul Valone (ECF #15-1), other Mecklenburg residents are experiencing similar delays exceeding 13 months.

to issue injunctive relief.² Motion at 5–7. This line of reasoning entirely ignores not only Defendants' unfettered ability to continue their delay tactics in the future, but also the representational standing of the organizational Plaintiffs, whose members' contemporaneous harms due to Mecklenburg County licensing delays continue to occur. ECF #1, ¶¶ 3–6.

First, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). Defendants have not clarified that "the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* Nor have Defendants claimed that all CHPs within Mecklenburg County are being issued without delay. Rather, Defendants' vigorous defense of the statutory scheme betrays an intent to *continue* prolonging the issuance of CHPs indefinitely. *See* Motion at 4, 16–17 (appearing to concede that a delay "for over a year" may *begin* to constitute a "lengthy wait time[]"). Moreover, even a mooted controversy will survive dismissal if the challenged conduct is "capable of repetition yet evading review," where a challenged action—delaying the issuance of a license— can be dispensed with prior to the completion of litigation and the same complaining party can reasonably expect the same controversy to recur. *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021). Here, even though Defendants already have either issued or renewed the individual Plaintiffs' CHPs, Plaintiffs can be expected to renew their CHPs in the future, subject to Defendants' continued delay tactics. *See* Motion at 5; ECF #1, ¶¶ 8–9; N.C.G.S. § 14-415.16 (providing for renewal of CHPs). Indeed, as Plaintiffs explained in their prior case

---

² To be sure, Defendants do not claim that the entirety of Plaintiffs' claims are moot, but only that an injunction should not be issued.

against Defendant McFadden, his office apparently has *never* issued permits timely – at any point since he took office in 2018.[3]

Individual Plaintiffs aside, Defendants fail to account for the numerous unnamed members and supporters represented by organizational Plaintiffs GOA, GOF, GRNC, and RWI, who continue to suffer exorbitant licensing delays in Mecklenburg County regardless of the individual Plaintiffs' newly issued CHPs. ECF #1, ¶¶ 3–6; *see also* ECF #1-2, ¶ 4; ECF #15-1, ¶ 4. *See Marszalek v. Kelly*, 2021 U.S. Dist. LEXIS 107613, *12 (N.D. IL June 9, 2021) (rejecting an identical claim to the one Defendants make here, "that the organizational plaintiffs lack standing because it is possible that the underlying members' claims have been mooted, as occurred with the named plaintiffs," explaining that "the organizations' descriptions of their membership are supported by declarations from their officers, which 'identify members who have suffered the requisite harm.'").

Finally, Defendants' reliance on *Stafford v. Baker*, 520 F. Supp. 3d 803 (E.D.N.C. 2021), is grossly misplaced. *See* Motion at 7. In dismissing the *Stafford* plaintiffs' claim for injunctive relief as moot, the court noted that, aside from the named plaintiff, "the complaint allege[d] no other facts pertaining to other individuals who may seek to obtain a PPP." *Stafford*, 520 F. Supp. 3d at 814. Absent further allegations of member injury, "the organizational plaintiffs lack[ed] standing to assert their claim for injunctive relief on the basis of the present allegations in the complaint." *Id.* No such issue exists in the present case; the organizational Plaintiffs have unambiguously alleged that they continue to have members and supporters who are being harmed by Defendants' unconstitutional actions. ECF #15-1. *See Md. Highways Contractors Ass'n v.*

---

[3] *See Fiscal Year 2020 Adopted Budget*, MECKLENBURG CNTY. 364, https://www.mecknc.gov/CountyManagersOffice/OMB/PriorBudgets/Documents/FY2020.pdf (last visited Feb. 17, 2023).

*Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (recognizing the doctrine of representational standing for organizational plaintiffs).

## III. DISMISSAL AS TO MCSO DOES NOT DISPENSE WITH THIS SUIT.

Defendants rely on various non-binding district court decisions for the proposition that the Mecklenburg County Sheriff's Office is a "non-suable entity." Motion at 8–9. However, each of these cases, along with the North Carolina Court of Appeals' decision Defendants reference, was decided before *Debruhl v. Mecklenburg Cnty. Sheriff's Off.*, 259 N.C. App. 50, 815 S.E.2d 1 (2018)—a suit against the very same entity Defendants claim cannot be sued, where the court resolved the case on Fourteenth Amendment grounds and did not need to reach *a Second Amendment challenge to MCSO's permitting process*. In other words, what Defendants claim cannot occur has, in fact, occurred. That said, and irrespective of the merits of Defendants' argument, to the extent that any injunctive relief in this case would bind any successors to Defendant McFadden's office – as he is sued in his official capacity – Plaintiffs would not contest dismissal of the Mecklenburg County Sheriff's Office from this litigation.

## IV. DEFENDANTS MISUSE THEIR MOTION TO DISMISS BY ARGUING THE MERITS.

Defendants make improper merits arguments throughout their Motion. *See, e.g.*, *id.* at 9 (emphasis added) (claiming "Plaintiffs' Second Amendment claim has *no merit*," and alleging what Plaintiffs "must establish … to succeed" on the merits); at 17 (concluding that "Plaintiffs' Second Amendment rights were not infringed"); at 10 (claiming that "*Bruen* actually mandates dismissal of a facial challenge" yet admitting that "the government must demonstrate that the regulation is consistent with this Nation's historical treatment of firearm regulation"); at 13–14 (rationalizing Defendants' open-ended mental health inquiry); at 15 (suggesting that applicants might lie about military service on their applications); at 15–16 (claiming that Defendants are not

"responsible for the delays" when they are the ones choosing to send boundless mental health requests); at 18 ("the MHP are constitutional on their face and as applied"). At bottom, these arguments do not belong in a motion to dismiss. *See, e.g.*, *Pinckney v. SLM Fin. Corp.*, 433 F. Supp. 2d 1316, 1319 (N.D. Ga. 2005) ("Defendant is arguing the substantive merits of Plaintiff's claim, which is improper at this stage of the litigation, where the Court accepts as true all of the allegations in the Complaint in order to determine whether Plaintiff has stated a claim for relief."). Rather, as the Fourth Circuit held, "'[t]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Plaintiffs' Complaint satisfies this standard by asserting facts giving rise to constitutional violations caused directly by Defendants' conduct.

To state a Second Amendment claim and place the burden on Defendants to historically justify their infringements, Plaintiffs need only have alleged (i) that they belong to "the people" the Second Amendment contemplates, (ii) that the weapons at issue are protected "arms," and (iii) that the challenged regulation affects the right to "keep" (own) or "bear" (carry) those arms. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2134–35 (2022). Plaintiffs have met this minimal burden; all are "law-abiding person[s] who can legally possess firearms, and [are] not

disqualified from obtaining or renewing a CHP." ECF #1, ¶¶ 7–9; *cf. Bruen*, 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."). They seek to carry concealed handguns, which are unquestionably protected arms. ECF #1, ¶¶ 7–9; *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010); *Bruen*, 142 S. Ct. at 2134. And Plaintiff Williams alleged that she could not even purchase a handgun without first obtaining a CHP. *See* ECF #1, ¶ 7 ("Defendant Sheriff Garry McFadden's failure to timely issue Williams a CHP is an infringement not only of her right to keep and bear arms in public for self-defense but also her right to even acquire a handgun to keep for self-defense within her home."). This was more than sufficient to state a claim under the Second Amendment, Defendants' objections on the merits notwithstanding.

Defendants' administration of the North Carolina permitting scheme—which necessarily restricts when and how one may publicly carry and even whether someone can purchase a handgun—affects constitutionally protected persons, arms, and conduct. Defendants' facial-as-applied distinction (Motion at 12–13) is irrelevant;[4] *all* properly alleged Second Amendment claims subject governmental parties responsible for regulating protected conduct to the burden of historical justification. *Bruen*, 142 S. Ct. at 2126.

Perhaps now realizing that they *forgot* to engage in the historical analysis and *failed* to provide the historical analogues that *Bruen* mandates (*see* ECF #15, at 9), Defendants now use their Motion to Dismiss to argue that the Mental Health Provisions are *presumptively constitutional* under *Heller*, *McDonald*, and *Bruen* and therefore exempt from historical scrutiny. Motion at 10–

---

[4] *See Citizens United v. FEC*, 558 U.S. 310, 331 (2010) ("[T]he distinction between facial and as-applied challenges … goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint.").

12 ("*Bruen* actually mandates dismissal of a facial challenge to the MHP");[5] *see also* ECF #14 (failing entirely to proffer examples evincing a broad and enduring Founding-era acceptance of mental health record-related licensing delays, licensing delays of any kind, or even licensing requirements in the first place). But *Bruen* never created any exemptions from the framework it explained, and *Heller* forecloses the notion that the Supreme Court issued any sort of untouchable advisory opinion as to certain firearm regulations. *See* Motion at 11; *Bruen*, 142 S. Ct. at 2126 (emphasis added) ("[T]he government *must* demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."); *Heller*, 554 U.S. at 635 ("And there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us.").[6]

Defendants appear to separately argue in the alternative (again, on the merits) that the challenged states are "consistent with the United Sates' historical treatment." Motion at 10. Yet Defendants do not proffer even a single historical source establishing this purported "historical treatment," but instead fall back on their claims that "the United States Supreme Court has

---

[5] To support their argument, Defendants cobble together *Heller*'s statement that "nothing in its opinion 'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill'" with Justice Kavanaugh's concurring statement in *Bruen* (not adopted by the majority) that a "mental health records check" is a permissible screening requirement. *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). But nothing in either *Heller* or *Bruen* said that the government may presume that all individuals are mentally ill, and then leave it up to the individual to prove (in a process taking more than one year) that he or she does not have a mental illness.

[6] Indeed, even "longstanding prohibitions" are vulnerable to constitutional attack. *See, e.g.*, *United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist. LEXIS 168329 (W.D. Tex. Sept. 19, 2022) (striking 18 U.S.C. § 922(n) by applying *Bruen*); *United States v. Price*, No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W. Va. Oct. 12, 2022) (striking 18 U.S.C. § 922(k) as unconstitutional); *United States v. Perez-Gallan*, No. PE:22-CR-00427-DC, 2022 U.S. Dist. LEXIS 204758 (W.D. Tex. Nov. 10, 2022) (striking 18 U.S.C. § 922(g)(8) as unconstitutional).

repeatedly recognized" that disarmament of the mentally ill "is consistent with this country's historical tradition." *Id.* at 12 (citing a *district court* opinion that doesn't say this).

Defendants next advance the red herring that, because open carry remains available in North Carolina without the need for a CHP, Defendants' constitutional violations do not infringe the right to public carry. *Id.* at 13. Plaintiffs have already dealt with this *merits* argument in their reply brief on their motion for preliminary injunction, explaining that government officials do not get to pick and choose how Americans exercise their constitutional rights. *See* ECF #15, at 7. Moreover, this claim has no basis in *Bruen*; as Plaintiffs noted above, if a regulation affects the "right to 'bear' arms in public for self-defense," "the Constitution presumptively protects that conduct" and "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2135, 2126. **All** statutes affecting the right to keep and bear arms, when challenged, must survive historical scrutiny. *See id.* Finally, Defendants once again ignore that, in North Carolina, a CHP (or a Pistol Purchase Permit) is required before a person can *purchase* a handgun. Plaintiff Williams' Second Amendment right even to keep a handgun in the home was entirely extinguished for more than a year because Defendant McFadden would not issue her CHP so she could buy a handgun. *See* ECF #1, ¶ 7; *Heller*, 554 U.S. at 635 (holding that prohibiting ownership or possession of a handgun in the home violates the Second Amendment).

Next, Defendants again take issue with Plaintiffs' point (on the *merits*) that the additional CHP mental health records checks are redundant to the NICS system. In response, Defendants rely on *In re Bezanson*, No. COA20-105, 2020 N.C. App. LEXIS 519 (July 7, 2020), for the proposition that there is a "distinction between a disqualification for mental health adjudications ... and a disqualification for suffering from a physical or mental infirmity preventing the safe

handling of a firearm...."⁷ Motion at 14. But as Plaintiffs have already argued, all Defendants have done is take the bait 'hook, line, and sinker,' arguing forcefully that they have vast and open-ended discretion of precisely the sort that *Bruen* explicitly rejected. *See* ECF #15, at 5–6; ECF #14, at 8 (Defendants referencing the Sheriff's "obligatory ... exercise of discretion"); at 13 ("McFadden's ... discretion in the CHP process"); at 14 (claiming "sovereign immunity for discretionary acts"); *see also* Motion at 14 (citing *Cale v. Atkinson*, No. COA19-296, 2019 N.C. App. LEXIS 942, at *8 (Nov. 19, 2019), which held that it is "within the discretion of the sheriff to determine whether an applicant suffers from a physical or mental infirmity"). To be sure, Defendant McFadden claims that he has not abused his discretion, but *Bruen* itself involved the Court's facial rejection of a "grant[] [of] open-ended discretion to licensing officials"— irrespective of whether that discretion had been abused in practice. *Bruen*, 142 S. Ct. at 2161 (Kavanaugh, J., concurring); *see also id.* at 2138 n.9, 2123 n.1 (facially rejecting licensing regimes which "requir[e] the 'appraisal of facts, the exercise of judgment, and the formation of an opinion'").⁸

---

⁷ Of course, that decision is no longer good law after *Bruen*, as it concluded that there is no right to concealed carry: "while the Second Amendment protects an individual's right to *possess* a weapon, it does not protect one's right to *conceal* a weapon, and thus the 'right to carry a concealed handgun does not fall within the scope of the Second Amendment.'" *Bezanson*, at *5–6 (citing *Kelly v. Riley*, 223 N.C. App. 261733 S.E.2d 194, 198–99 (2012), which found, directly contrary to *Bruen*, that a "permit to carry a concealed handgun is [not] protected by the Second Amendment").

⁸ Defendants' confusing pivot to the alleged untruthfulness of applicants is equally unhelpful and entirely irrelevant. Motion at 15. A person who is "honorably discharged" from the armed forces is not prohibited by either state or federal law from possessing firearms even if he "may well have received treatment from the VA." *Id. See* 18 U.S.C. § 922(g)(6); NCGS 14-415.12(b)(7). Plus, any disqualifying adjudications or commitments pursuant to that treatment would already have been reported to NICS by the VA. *See Quick Reference Information*, FBI CRIM. JUST. INFO. SERVS. DIV. at 3, (Dec. 31, 2021), https://www.fbi.gov/file-repository/active-records-in-the-nics-indices-by-state.pdf; *see also* ECF #1, ¶ 77 ("Indeed, since 1998, the VA has provided its mental health records to NICS."). The only purpose of requesting VA records, then, is to permit the Sheriff to engage in a fishing expedition for information to then use in an exercise of unbridled discretion to

Defendants appear to misunderstand Plaintiffs' Complaint, stating that "Plaintiffs make no allegations that Defendants are somehow responsible for the delays in mental health providers' response to record requests...." Motion at 15. To the contrary, Plaintiffs' Complaint alleges that Defendant McFadden is directly responsible for infringement of their constitutional rights, deliberately delaying the licensing process by making duplicative mental health requests that he is well aware take ridiculous amounts of time.[9] ECF #1, ¶¶ 69, 72, 76, 80–82. To the extent that Defendant McFadden seeks to avoid liability by pointing fingers at third-party entities and agencies, that is a bit like a person affixing a friend's car keys to the collar of a stray dog, and then blaming resulting loss of the keys as being "completely out of the [person's] control." Motion at 17.

Finally, Defendants repeat their assertion that Plaintiffs "misstate[] the law" and that Plaintiffs have argued that an applicant "should have a decision on his or her permit within forty-five days." *Id.* at 16; ECF #14, at 8. On the contrary, all Plaintiffs have done is explain that, without the challenged provisions, the North Carolina licensing regime would operate to require a decision on permits with 45 days (hardly an unreasonable result). *See* ECF #15, at 3.

In short, each of Defendants' claims as to why the challenged provisions and their actions are constitutional is without merit. But more fundamentally, none is appropriate for a motion to

---

disqualify people he does not deem appropriate to carry firearms, the very sort of discretion which *Bruen* says is impermissible.

[9] *See also* ECF #1, ¶ 81 (Defendant McFadden "submits requests for records to the VA regardless of whether a person has ever served in the U.S. Armed Forces, an entirely unnecessary and pointless exercise for the large majority of CHP applicants."); *see also* Declaration of Bruce Kane, ECF #1-4, ¶ 10 ("Nor have I ever served in the military, and therefore am not a veteran."); Declaration of Jason Yepko, ECF #1-5, ¶ 11 ("Nor have I ever served in the military, and therefore am not a veteran."); Declaration of Sara Beth Williams, ECF #1-3, ¶ 7 ("Nor have I ever served in the military, and thus am not a veteran. And while my father served in the military, I have not been a dependent of his for almost 25 … years. I should not have any records within the [VA] which would require my Sheriff to seek records from Veterans Affairs.").

dismiss (which Defendants apparently recognize, having made all these same arguments in their opposition to *the merits* of Plaintiffs' Motion for Preliminary Injunction, ECF #14).

## V. DEFENDANTS' ATTEMPTS TO AVOID MONETARY LIABILTY ARE UNPERSUASIVE.

Presumably seeking to avoid financial liability with respect to Plaintiffs' Section 1983 claims, Defendants claim they should *all* be dismissed in favor of Plaintiffs' Second Amendment count. Motion at 18. Defendants claim that "Plaintiffs' Section 1983 claims all seek the same relief as their Second Amendment claim" (Motion at 18), apparently missing sections (e) and (f) of the Prayer for Relief in Plaintiffs' Complaint, ECF #1, at 38 (seeking "Attorneys' fees and costs to Plaintiffs pursuant to … 42 U.S.C. § 1988" and damages including "nominal damages"). On the contrary, Defendants are not "master of" Plaintiffs' Complaint, nor do they get to select their preferred claims, or choose their favored form of relief.

Defendants also claim that, amongst Plaintiffs' 1983 claims, each is duplicative to Plaintiffs' Second Amendment Section 1983 claim. Practicing by headnote, Defendants rely on a series of out-of-state district court opinions, none of which is helpful. For example, *Clifton v. DOJ*, No. 1:21-cv-00089-DAD-EPG, 2022 WL 2791355 (E.D. Cal. July 15, 2022), was a suit against the Department of Justice, not against a state actor under Section 1983. In *Clark v. City of Shawnee*, 228 F. Supp. 3d 1210 (D. Kan. 2017), the plaintiff raised a due process claim, but then in support raised only Second Amendment arguments that were "no more than an indirect and duplicative Second Amendment challenge." *Id.* at 1223; *accord Marszalek v. Kelly*, No. 20-cv-4270, 2022 WL 225882, at *20 (N.D. Ill. Jan. 26, 2022) (due process claim "another attempt to state a Second Amendment claim based upon a State's constraint of Plaintiffs' right to bear arms"); *Johnson v. Lyon*, 406 F. Supp. 3d 651, 671 (W.D. Mich. 2018) (asserting a due process "right to armed self-defense," which "merges with their independent Second Amendment claim"); *Second*

*Amend. Arms v. City of Chicago*, 135 F. Supp. 3d 743, 763 (N.D. Ill. 2015) (claiming a due process "fundamental right[] to sell firearms through retail sales"). Defendants' single North Carolina case is no more helpful, as *Henderson Amusement, Inc. v. Good*, 172 F. Supp. 2d 751, 755 n.4 (W.D.N.C. 2001), involved a due process "claim of unlawful seizure [that] would be reviewed under the protections afforded plaintiffs by the fourth amendment." In contrast to each of these cases, Plaintiffs' due process theory here is that Defendants' use of the challenged statute "has resulted in an arbitrary and capricious hodgepodge of policies across North Carolina counties." ECF #1, ¶ 112; *see also id.* ¶ 115 n.13 (prohibiting statutes "if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is [otherwise] free to adopt…."). This is not merely a rehash of their Second Amendment allegations, but rather a quintessential due process claim.

Irrespective of Defendants' cited out-of-circuit authorities, Fourth Circuit precedent controls here, which has made clear that "when … a defendant seeks dismissal of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation omitted). As this Circuit has recognized, "the Supreme Court has time and again considered multiple constitutional claims based on the same facts." *Id.* at 484 (citation omitted). To be sure, *Presley* acknowledged that "[i]n just one circumstance has the Supreme Court held that a single set of facts may not simultaneously give rise to two constitutional violations: when one of the provisions asserted violated contains only a 'generalized notion' of constitutional rights – such as substantive due process – and the other provision is 'an explicit textual source of constitutional protection' that

specifically addresses the precise harm at issue," but concluded that "the Court has never held that one specific constitutional clause gives way to another equally specific clause when their domains overlap." *Id.* at 484–85.

Finally, to the extent that Defendants use their Motion to Dismiss (at 20–21) to attack *the merits* of Plaintiffs' Equal Protection claim, the time to do that would be at trial or on a motion for summary judgment. Plaintiffs did not seek a preliminary injunction on their Fifth Amendment claims, and there is no need to brief those issues here. *See* ECF #10; Motion at 20 (emphasis added) (confusingly asserting Plaintiffs "do not *state* an Equal Protection claim," but then arguing that "to *succeed* on an Equal Protection claim, Plaintiffs must *show*….").[10]

The Fourth Circuit holds that, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Regardless of whether Plaintiffs ultimately prevail on this claim, Plaintiffs' Complaint includes more than sufficient allegations to make these showings. *See* ECF #1, at ¶¶ 77, 101, 118–26 (alleging (i) that "Sheriff McFadden's delay is … an intentional act to deprive the residents of Mecklenburg County … of their right to

---

[10] Once again, Defendants' out-of-state authorities do not say what Defendants claim, and certainly do not stand for the idea that an Equal Protection claim cannot be made as between residents of different counties. Motion at 20. For example, the Eleventh Circuit in *Wexler v. Anderson*, 452 F.3d 1226 (11th Cir. 2006), explained that the appropriate question was whether voting rights could be uniformly exercised between counties, not whether one county used a "touchscreen" versus an "optical scan" system. *Id.* at 1231; *see also Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 407 (W.D. Pa. 2020) (same); *Jones v. Bd. of Cnty. Comm'rs*, No. 20-2363-SAC-JPO, 2020 U.S. Dist. LEXIS 193434, at *3 (D. Kan. Oct. 19, 2020) (finding that, although the televisions at a county jail did not show certain stations, "[t]he law is clear that plaintiff does not have a constitutional right to view a particular television station."). In other words, each of these cases actually *supports Plaintiffs' position* here, where certain Second Amendment rights *cannot be exercised* in Mecklenburg County but *can be exercised* in every other county in North Carolina.

bear arms," (ii) "with the seeming intent to cause delays," (iii) that the Sheriff is treating the residents of Mecklenburg County differently than other sheriffs are treating their residents, (iv) that "[i]n all material respects – aside from the identity of their local sheriffs – the residents of all North Carolina counties are similarly situated with respect to their entitlement to exercise their right to keep and bear arms," and (v) that there is "no lawful basis" for Sheriff McFadden to treat his residents differently). Plaintiffs' Equal Protection claim clearly survives a motion to dismiss at this early stage, because the Court is required to "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citation omitted).

## Conclusion

Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

February 21, 2023

/s/ Robert Neal Hunter, Jr.
Robert Neal Hunter, Jr. (NCSB 5679)
HIGGINS BENJAMIN, PLLC
301 N Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone: (336) 273-1600
Facsimile: (336) 274-4650
Email: rnhunterjr@greensborolaw.com

Ronald J. Shook, II (NCSB 43407)
THE LAW OFFICES OF RONALD J. SHOOK
121 E. Main Ave.
Gastonia, NC 28012
Telephone: 704-671-2390
Facsimile: 704-671-4431
Email: ron@rjshooklaw.com

*Attorneys for Plaintiffs*