UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:22-cv-630-MOC-DSC

SARA BETH WILLIAMS, BRUCE )
KANE, JASON YEPKO, GUN OWNERS )
OF AMERICA, INC., GUN OWNERS )
FOUNDATION, GRASS ROOTS )
NORTH CAROLINA, and RIGHTS )
WATCH INTERNATIONAL, )
)
        Plaintiffs, )
  v. )
)
SHERIFF GARRY MCFADDEN, )
in his official capacity as Sheriff of )
Mecklenburg County and the )
MECKLENBURG COUNTY )
SHERIFF'S OFFICE )
)
        Defendants. )
_____ )

## **MEMORANDUM OF THE STATE OF NORTH CAROLINA IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

The State of North Carolina, by and through the Attorney General of North Carolina and the undersigned counsel, filed a motion for conditional intervention in this matter to the extent the Court understands Plaintiffs to be asserting a facial challenge to the constitutionality of certain provisions of the North Carolina's concealed handgun permit regime, N.C.G.S. § 14-415.13 through § 14-415.15. [D.E. 19] Defendants moved to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [D.E. 16] Defendants' motion, in part, addresses Plaintiffs' constitutional claims. *See, e.g.*, D.E. 17, pp 9, 17. The State, in its capacity as a potential

intervenor, hereby submits this memorandum in support of Defendants' Motion to Dismiss Plaintiffs' facial challenge to provisions of the concealed handgun permit regime, to the extent a facial challenge has been asserted. [D.E. 16].

## INTRODUCTION

Plaintiffs Sara Beth Williams, Bruce Kane, Jason Yepko, Gun Owners of America, Inc., Gun Owners Foundation, Grass Roots North Carolina, and Rights Watch International allege that Garry McFadden, the Mecklenburg County Sherriff, has violated their Second Amendment rights through his implementation of certain provisions of North Carolina's concealed handgun licensing regime. [Complaint at 1-2 (citing N.C.G.S. §§ 14-415.13 to N.C.G.S. 14-415.15 (collectively "Mental Health Provisions"))]. Plaintiffs request this Court declare the Mental Health Provisions unconstitutional as a violation of their Second Amendment rights and of their rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution. Defendants moved to dismiss all claims arguing, in part, that Plaintiffs' Second Amendment and equal protection claims fail as a matter of law, and that Plaintiffs are not entitled to raise a Second Amendment claim and Fourteenth Amendment claims based on the same allegations and seeking the same relief. As discussed below, Plaintiffs' complaint alleges facts that necessarily defeat any facial challenge to the Mental Health Provisions, and North Carolina's concealed handgun permit regime is plainly constitutional.

## BACKGROUND

The Mental Health Provisions are part of North Carolina's comprehensive regime for the issuance of concealed handgun permits. N.C.G.S. § 14-415.10, *et seq*. North

Carolina is one of 43 states known as "'shall issue' jurisdictions, where authorities must issue concealed-carry [handgun] licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 142 S. Ct. 2111, 2123 (2022). "[S]hall issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

The North Carolina legislature granted the authority for issuing concealed handgun permits to sheriffs. N.C.G.S. § 14-415.11(b). An individual wishing to obtain a concealed handgun permit submits an application to the sheriff of the county in which they reside. N.C.G.S. § 14-415.13(a). "The sheriff *shall issue* a permit to an applicant if the applicant qualifies under the [] criteria" enumerated in N.C.G.S. § 14-415.12(a)(1)-(5). N.C.G.S. § 14-415.12(a) (emphasis added). In addition to confirming that an applicant has submitted all of the required materials, sheriffs are also charged with determining the "qualification or competency of the person applying for the permit, including record checks." N.C.G.S. § 14-415.15(a). To make that determination, sheriffs are authorized to request any records concerning the mental health or capacity of the applicant. *Id.* However, they must make their requests within 10 days of receiving the application items listed in N.C.G.S. § 14-415.13. N.C.G.S. § 14-415.15(a). "[W]ithin 45 days after receipt of the items listed in N.C.G.S. § 14-415.13 from an applicant, *and receipt of the required records concerning*

*the mental health or capacity of applicant*, the sheriff shall issue or deny the permit." N.C.G.S. § 14-415.15(a) (emphasis added).

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "is intended to test the legal adequacy of the complaint." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). "Dismissal under Rule 12(b)(6) is proper when on its face the complaint reveals either no law supports the plaintiff's claim or the absence of facts sufficient to make a good claim, or when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Esancy v. Quinn*, No. 5:05-CV-26, at *3 (W.D.N.C. Feb. 10, 2006) (quoting *Andrews v. Elliot*, 109 N.C. App. 271, 274 (1993)); *see Gaber v. Henderson*, No. 1:08cv76, at *10 (E.D. Va. June 2, 2008) (dismissing claim where "sheer absence of any authority support[ed] the alleged constitutional right").

## ARGUMENT

Plaintiffs request this Court declare the Mental Health Provisions unconstitutional under the Second and Fourteenth Amendments of the United States Constitution, barring enforcement "insofar as they grant unfettered discretion to local sheriffs to determine what mental health record to seek, and how long to wait to receive them." [D.E. 1 at 38, ¶ c] As discussed below, dismissal of any facial challenge is appropriate because the Complaint fails to allege a facial constitutional challenge, North Carolina's concealed handgun permit regime is presumptively constitutional under *Bruen,* and Plaintiffs cannot bring Fourteenth Amendment claims based on the same allegations as their Second Amendment claim.

4

## I. THE COMPLAINT DOES NOT ALLEGE A FACIAL CHALLENGE TO NORTH CAROLINA'S CONCEALED HANDGUN PERMIT REGIME.

Plaintiffs ask this Court to declare N.C.G.S. § 14-415.13 through N.C.G.S. § 14-415.15 unconstitutional under the Second and Fourteenth Amendments of the United States Constitution. [D.E. ¶¶ 96-106] As discussed below, the Complaint alleges facts that necessarily defeat Plaintiffs' claims, subjecting it to dismissal pursuant to Rule 12(b)(6).

A plaintiff asserting a facial challenge "must establish that no set of circumstances exists under which an act would be valid." *Fusaro v. Howard*, 19 F.4th 357, 373 (4th Cir. 2021) (internal citations and quotations omitted). Facial challenges are the "most difficult challenge to mount successfully," and are generally disfavored. *United States v. Salerno*, 107 S. Ct. 2095, 2100 (1987); *see also Wash. State Grange v. Wash. State Republican Party*, 128 S. Ct. 1184, 1190-91 (2008) (discussing reasons facial challenges are disfavored).

Here, the Complaint alleges that under *most* circumstances sheriffs implement North Carolina's concealed handgun permitting regime in a valid, constitutional manner. Plaintiffs allege "[f]ew if any other North Carolina sheriffs make such mental health requests before issuing CHPs and, not coincidentally, those sheriffs are able to issue or deny all CHP applications within the 45-day window." [D.E. 1, ¶ 21] Therefore, according to Plaintiffs, Defendant McFadden's implementation of North Carolina's concealed handgun permit regime is the exception, not the rule. The Complaint further alleges "most North Carolina sheriffs are completing the entire CHP application process . . . in mere days or a few weeks," whereas Defendant McFadden "drag[s] the process on for many, many

months and, in some cases, over a year." [D.E. 1, ¶ 67] Plaintiffs allege "[t]his lengthy delay" violates *Bruen*. [D.E. 1, ¶ 68] Put simply, rather than allege that there are no circumstances under which the challenged statutes may be applied consistent with the Constitution, the Complaint does the opposite: it alleges that most North Carolina sheriffs implement the CHP licensing regime in accord with constitutional standards.

Ultimately, the Complaint alleges that seeking mental health records is unconstitutional only in certain scenarios. Plaintiffs allege "the Mental Health Provisions are unconstitutional, insofar as they grant unfettered discretion to local sheriffs to determine what mental health records to seek, and how long to wait to receive them." [D.E. 1, p 37, ¶ c] Thus, under Plaintiffs' theory of this case, sheriffs violate the Constitution only when they exceed their discretion in requesting records, or wait too long to receive them. This does not satisfy the requirements for pleading a facial challenge.

Finding that Plaintiffs have failed to allege a facial challenge would be consistent with *Bruen,* which anticipated that shall-issue regimes would typically be subject to as-applied challenges, not facial challenges. In *Bruen*, the Court explained that the presumptively constitutional 43 "shall issue" regimes "can be put toward abusive ends . . . where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9. However, as Justice Kavanaugh explained in his concurring opinion, challenges that make those kinds of claims are "as-applied." *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) ("[S]hall issue licensing regimes are constitutionally permissible, subject of course to an

as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice.").

In sum, the Complaint raises the type of as-applied challenge anticipated in *Bruen*, while defeating any alleged facial claim. Accordingly, to the extent Plaintiffs attempt to assert a facial claim, any such claim should be dismissed.

## II. NORTH CAROLINA'S CONCEALED HANDGUN PERMIT REGIME IS CONSTITUTIONAL UNDER *BRUEN*.

If the Court agrees Plaintiffs have failed to state a facial claim for the reason stated above, it need not inquire further. However, Plaintiffs' suit also should be dismissed on the alternative grounds that it fails to state a claim on the merits under controlling law. Contrary to Plaintiffs' arguments, *Bruen* does not support their Second Amendment claim. In fact, it does the opposite: *Bruen* indicates that "shall-issue" concealed handgun permit regimes like North Carolina's are presumptively constitutional. *Bruen*, 142 S. Ct. at 2138 n.9.

In *Bruen*, the plaintiffs challenged New York's licensing regime, which "issue[d] public-carry licenses only when an applicant demonstrate[d] a special need for self-defense." *Bruen*, 142 S. Ct. at 2122. Under the New York regime, if an applicant wanted to carry a firearm outside their home or place of business for self-defense, they were required to prove that "proper cause" existed to issue such a license. *Id.* at 2122-23. Absent such a showing, the applicant could only receive a "restricted" license for public carry, allowing them "to carry a firearm for a limited purpose, such as hunting, target shooting, or employment." *Id.* at 2123 (citations omitted). New York courts held that "proper cause"

7

required an applicant to "demonstrate a special need for self-protection distinguishable from that of the general community." *Id.* (citations omitted)

The Supreme Court found New York's regime unconstitutional. In doing so, the Court cited *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), and asked whether New York's regime was "consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S. Ct. at 2131. The Court found that there was no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id*. at 2138. Accordingly, the Court found New York's regime—which imposed such a requirement—unconstitutional.

The Court contrasted New York's regime with the "shall-issue" licensing regimes of 43 other states, including North Carolina. *Bruen* notes that States may lawfully require individuals to be licensed before they can carry handguns, so long as any licensing regime avoids discretionary criteria and contains only "narrow, objective, and definite standards." *Bruen*, 142 S. Ct. at 2138 n.9. Accordingly, under the "shall-issue" licensing regimes, asserting a "general desire for self-defense is sufficient to obtain a permit." *Bruen*, 142 S. Ct. at 2138 n.9. A constitutionally permissible scheme, according to the Court, will "often require applicants to undergo a background check . . . designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding and responsible citizens." *Id*. As Justice Kavanaugh explained in his concurring opinion, such "regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training." *Id*. at 2162.

Prior to *Bruen* the Supreme Court noted that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are "presumptively lawful." *Heller*, 128 S. Ct. 2783, 2817 n.26; *see also McDonald v. Chicago*, 130 S. Ct. 3020, 3047 (2010) ("Our holding [in *Heller*] did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill.") (internal quotation omitted). The majority in *Bruen* was careful not to disturb that precedent. As Justice Alito explained in his concurring opinion, "[a]ll that we decide in this case is that the Second Amendment protects the right of *law-abiding* people to carry a gun outside the home for self-defense . . . ." *Bruen*, 142 S. Ct. at 2159 (emphasis added).

Thus, *Bruen* supports finding North Carolina's licensing regime, which conducts mental health records checks through the challenged Mental Health Provisions, constitutionally permissible on its face.

### III. PLAINTIFFS' DUE PROCESS CLAIMS ARE DUPLICATIVE OF THEIR SECOND AMENDMENT CLAIM AND SUBJECT TO DISMISSAL.

Plaintiffs attempt to make a substantive due process claim (Count III) and equal protection claim (Count IV) under the Fourteenth Amendment. These claims duplicate their Second Amendment Claim (Count II) and are subject to dismissal.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 114 S. Ct. 807, 813 (1994) (finding no substantive due process claim where claims arising out of pretrial deprivations of liberty as the Fourth Amendment

9

governs); *see, e.g., Hoglan v. Mathena*, No. 7:18-cv-00140, 2022 U.S. Dist. LEXIS 38186, at *24 (W.D. Va. Mar. 3, 2022) (dismissing substantive due process claims as duplicative of First Amendment claims); *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001) (treating "equal protection as subsumed by, and coextensive with" the defendant's First Amendment claim). In *McDonald v. Chicago*, 130 S. Ct. 3020 (2010), the Supreme Court explained that the "right to bear arms" is "a substantive guarantee." *Id.* at 3043-44. Thus, because Plaintiffs' Fourteenth Amendment claims are based on the same facts underpinning their Second Amendment claim and seek the same relief, they are duplicative and should be dismissed.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Courts will uphold a law that "neither burdens a fundamental right nor targets a suspect class . . . so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 116 S. Ct. 1620, 1627 (1996). Courts have generally found classifications such as race, religion, or gender suspect. *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008) (citing *City of New Orleans v. Dukes*, 96 S. Ct. 2513 (1976).

Plaintiffs fail to allege either prong of an equal protection claim. First, as discussed above, Plaintiffs' Second Amendment claim is meritless. Therefore a fundamental right is

not at issue. Second, Plaintiffs do not allege they are members of a suspect class. Instead, they allege their equal protection rights are being violated "based only upon the classification of the county in which they reside." [D.E. 1, ¶ 125] This does not meet the threshold for stating an equal protection claim.

## **CONCLUSION**

To the extent Plaintiffs allege a facial constitutional challenge to N.C.G.S. § 14-415.13 through N.C.G.S. § 14-415.15, they have failed. The Complaint alleges facts that necessarily defeat any such challenge – that the Mental Provisions are implemented in a constitutionally permissible manner by most, if not all, other sheriffs. The Supreme Court's recent decision in *Bruen* supports finding Plaintiffs have alleged an as-applied, rather than a facial challenge. Even if Plaintiffs had stated a facial constitutional challenge, *Bruen* also supports finding North Carolina's licensing regime constitutionally permissible on its face. Finally, Plaintiffs cannot allege Fourteenth Amendment claims in addition to their Second Amendment claims where they are based on the same facts and seek the same relief. Accordingly, the State respectfully requests this Court dismiss Plaintiffs' Complaint to the extent it raises a facial constitutional challenge.

Respectfully submitted, this 22nd day of February, 2023.

JOSHUA H. STEIN
Attorney General

/s/ Michael Bulleri
Michael Bulleri
Special Deputy Attorney General
N.C. State Bar No. 35196
N.C. Department of Justice
Post Office Box 629

Raleigh, NC 27602
Telephone: (919) 716-6900
Fax: (919) 716-6763
Email: mbulleri@ncdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing document with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This 22nd day of February, 2023.

/s/ Michael Bulleri
Michael Bulleri
Special Deputy Attorney General