IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:22-cv-630-MOC-DSC

SARA BETH WILLIAMS, BRUCE KANE, JASON YEPKO, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, GRASS ROOTS NORTH CAROLINA, and RIGHTS WATCH INTERNATIONAL,

Plaintiffs,

v.

SHERIFF GARRY MCFADDEN, in his official capacity as Sheriff of Mecklenburg County, and the MECKLENBURG COUNTY SHERIFF'S OFFICE

Defendants.

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

## I. THE APPLICANTS' INJUNCTIVE RELIEF CLAIM IS NOT SAVED BY THE CAPABLE OF REPETITION YET EVADING REVIEW DOCTRINE

While Plaintiffs acknowledge that Sara Beth Williams, Bruce Kane, and Jason Yepko (collectively the "Applicants") have had their CHP applications approved, they claim that Applicants' injunctive relief claim is saved by the "capable of repetition yet evading review" exception to mootness. [Document 21,

pp. 2-3]. This exception permits federal courts to consider disputes, although moot, that are "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 463, 127 S.Ct. 2652, 2663, 168 L.Ed.2d 329 (2007) (internal quotation marks omitted). Applicants cannot meet their burden to demonstrate the exceptional circumstances required for this exception. *Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669 (1983) (in the absence of a class action, jurisdiction on the basis that a dispute is "capable of repetition, yet evading review" is limited to the "exceptional situation[ ].")

This exception applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal quotation marks and alteration omitted). The Applicants bear the burden of showing this exception's application. *Williams v. Ozmint*, 716 F.3d 801, 810 (4th Cir. 2013). Applicants contend that this exception applies because "even though Defendants already have either issued or renewed the individual Plaintiffs' CHPs, Plaintiffs can be expected to renew their CHPs in the future." CHPs are valid for five years from the date of issuance. N.C.G.S. § 14-415.11 (b). At the very earliest, Applicants would apply for renewal in February 23, 2027

(Williams)[1], January 6, 2028 (Kane)[2], and November 16, 2027 (Yepko).[3] Applicants' conjecture – that five years from now 1) they may apply and 2) they may then have to endure a waiting period – is the type of conjecture as to the likelihood of repetition that has no place in the application of this exceptional and narrow grant of judicial power. *See Weinstein v. Bradford*, 423 U.S. 147, 148–49, 96 S.Ct. 347, 348 (1975).[4]

## II. PLAINTIFFS' SECOND AMENDMENT VIOLATION CLAIM SHOULD BE DISMISSED

Plaintiffs repeatedly suggest that Defendants are making "merits arguments" in their motion to dismiss which is more appropriate for summary judgment after development of the record. [Document 21, p. 1, 5]. As this Court is well aware, motions to dismiss are routinely filed, and often granted, in complaints which allege statutes are unconstitutional. *See e.g. Doe v. Virginia Dept. of State Police*, 713 F.3d. 745, 754 (4th Cir. 2013) (affirming motion to dismiss Constitutional challenge to Virginia statute preventing sex offender from entering grounds of school without prior permission from court or school); *Giarratano v. Johnson*, 521 F.3d. 298, 302 (4th Cir. 2008) (affirming motion to dismiss Plaintiff's claim that

---

[1] Williams' CHP was completed on February 23, 2022 [Document 1, p. 5], and after receipt of her mental health records, her permit was approved on November 18, 2022. [Document 14-2, p. 5].
[2] Kane sought renewal of his CHP on July 11, 2022 [Document 1, p. 5], and his renewal application was approved on January 6, 2023. [Document 14-2, p. 5].
[3] Yepko sought renewal of his CHP in October 2021, filled out the proper forms by March 2022 [Document 1, p. 5], and his renewal application was approved on November 16, 2022. [Document 14-2, p. 5].
[4] Defendants acknowledge that the Organizational Plaintiffs likely have standing in this injunctive relief claim at this stage of the proceedings.

3

Virginia statute excluding prisoner from filing freedom of information act requests violated Plaintiff's equal protection rights). Defendants' motion does not require discovery or a development of the record. On its face, the challenged statutes are facially constitutional and constitutional as applied to Plaintiffs. Whether the claims "lack merit," do not "succeed", or fail to "show" one thing or another[5], the result is the same: the claims should be dismissed.

Plaintiffs finally clarify that the "certain portions of N.C.G.S. § 14-415.13 through N.C.G.S. § 14-415.15" [Document 1, p. 2] which they seek to be declared as unconstitutional are N.C.G.S. §§ 14-415.13 (a)(5), and 14-415.15(a). [Document 21, p. 2]. Plaintiff concedes the constitutionality of N.C.G.S. § 14-415.12(a)(3) which requires North Carolina Sheriffs to determine that an "applicant does not suffer from a physical or mental infirmity that prevents the safe handling of a handgun." The challenged statutes, N.C.G.S. §§ 14-415.13(a)(5) and 14-415.15(a), merely require an individual to sign a release authorizing disclosure to the Sheriff of "any records concerning the mental health or capacity of the applicant" to determine if the applicant is disqualified under N.C.G.S. § 14-415.12 (N.C.G.S. § 14-415.13(a)(5)), and allow the Sheriff to request these records within ten days, and require that the Sheriff either issue or deny the permit within forty

---

[5] Plaintiffs bizarrely contend that Defendants' use of these terms suggest that a motion to dismiss must be denied because "merit" or "succeed" or "show" imply the need for development of a factual record. [Document 21, pp. 1, 5, 14]. To be clear, Defendants' use of these multiple terms simply points to the singular and inescapable conclusion that Plaintiffs fail to state a claim upon which relief can be granted.

4

WBD (US) 60660825v1

five days after receipt of these records (N.C.G.S. § 14-415.15(a)). *See also* Document 21, p. 2 (Plaintiffs identifying the relevant statutes.) While Plaintiffs contend that N.C.G.S. § 14-415.15(a) allows the Sheriff "vast and open-ended discretion," [Document 21, p. 10], Sheriff McFadden does not request mental health records from every mental health provider in Mecklenburg County. He requests mental health records from seven mental health providers because he believes that the majority of Mecklenburg County residents who seek mental health treatment do so through one of those providers. [Document 14-2, ¶¶ 7-9].

The question before the Court is simple: whether reviewing an applicant's mental health records prior to approving a CHP application is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *New York State Rifle and Pistol Association, Inc. v. Bruen*, - U.S. -, 142 S. Ct. 2111, 2127 (2022). The answer is yes, and does not require discovery, but only a review of United States Supreme Court opinions which make it clear that the prohibition of the possession of firearms by the mentally ill is constitutional.

Beginning with *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), the United States Supreme Court held that while the Second Amendment conferred upon an individual the right to keep and bear arms in the home, nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id*. at 626, 128 S.Ct. at

2816-2817. Two years later, in *McDonald v. Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 3047 (2010), the Supreme Court reiterated that their decision did not cast any doubt on longstanding regulatory measures as constitutional "prohibitions on the possession of firearms by felons and the mentally ill." *Id*., at 626 – 627, 128 S.Ct., at 2816–2817.

Just last year in *Bruen*, the Supreme Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must justify its regulation by demonstrating that it is consistent with the Nation's historical treatment of firearm regulation." - U.S.-, 142 S.Ct. at 2129-2130.. As one district court recently noted, "*Bruen* changed the landscape of Second Amendment jurisprudence, but it did not change it that far." *Oakland Tactical Supply LLC, et al. v. Howell Township*, 2023 WL 2074298 at *3 n. 4 (E.D. Mich. 2023). Indeed, with respect to prohibitions on the possession of firearms by the mentally ill, *Bruen* changed nothing.

While *Bruen* struck down New York's licensing scheme which "issue[d] public-carry licenses only when an applicant demonstrate[d] a special need for self-defense," - U.S. -, 142 S.Ct. 2111, 2122, the Court held that a constitutionally permissible scheme will "often require applicants to undergo a background check…designed to ensure only that those bearing arms in the jurisdiction are, in fact, law abiding and responsible citizens." *Id.* at 2138 n. 9. As Justice Kavanaugh

explained in his concurring opinion, such "regimes may require…a mental health records check." *Id.* at 2162.   That is precisely what the statutes Plaintiffs allege are unconstitutional do: require a mental health records check.

A review of historical precedent makes it clear that the two statutes at issue in this case are consistent with this Country's historical tradition. For centuries, Anglo-American law has categorically limited the gun rights of certain presumptively dangerous persons to promote public safety.  The 1689 English Bill of Rights which *Heller* identified as a "predecessor of our Second Amendment," 554 U.S. at 593, provided that English subjects "may have Arms for Defence suitable to their Conditions, and as allowed by Law." *Id*.  Simply put, "by the time of American independence, England had established a well-practiced tradition of disarming dangerous persons - violent persons and disaffected persons perceived as threatening to the crown."  Patrick J. Charles, *"Arms for Their Defense"?: An Historical, Legal, and Textual Analysis of the English Right to have arms and Whether the Second Amendment Should be Incorporated in* McDonald v. City of Chicago, 57 Clev. St. L. Rev 351, 376, 382-383 (2009).

This tradition carried forward in the English colonies. By the second half of the nineteenth century, American jurist Thomas M. Cooley proclaimed (in a treatise *Heller* described as "massively popular," 554 U.S. at 616), that certain persons - namely, "the idiot, the lunatic, and the felon, on obvious grounds" - had

7

long been "almost universally exclude[d]" from exercising certain civic rights in America, including the right to bear arms. Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 29 (1st ed. 1868). *See also Nat'l Rifle Ass'n of Am., Inc v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d. 185, 201 (5th Cir. 2012) (noting that "at the time of the founding, 'the right to arms was inextricably and multifariously linked to that of civic virtue (i.e. the virtuous citizenry),' and that '[o]ne implication of this emphasis on the virtuous citizen is that the right to arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals) or those who, like children or the mentally imbalanced, are deemed incapable of virtue", *quoting* Don Kates & Clayton Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1359-60.

As a general matter, in England, justices of the peace could lock up "dangerous lunatics" and seize their property. *See* Richard Moran, *The Origin of Insanity as a Special Verdict: The Trial for Treason of James Hadfield*, 19 Law & Soc'y Rev. 487 (1985) (*citing* Vagrancy Act of 1744, 17 Geo. 2, c. 5). In reflecting on this historical tradition, the Third Circuit aptly concluded, "if taking away a lunatic's liberty was permissible, then we should find the 'lesser intrusion' of taking his or her firearms was also permissible.*"* *Beers v. Att'y Gen. United States*, 927 F.3d 150, 158 (3rd Cir. 2019); *see also United States v. Emerson*, 270

8

F.3d. 203, 226 n.21 (5th Cir. 2001) (noting how "lunatics" and "those of unsound mind" were historically prohibited from possessing a firearm); *United States v. Bena*, 664 F.3d. 1180, 1183 (8th Cir. 2011) (concluding that historically "the right to arms does not preclude law disarming…the mentally unbalanced.")

Thus, *Heller*, *McDonald*, and *Bruen*, as well as historical tradition, all mandate dismissal of Plaintiffs' Second Amendment claim.

### III. PLAINTIFFS' SECOND, THIRD, AND FOURTH CLAIMS SHOULD BE DISMISSED

In their response to Defendants' argument that since Plaintiffs' Section 1983 claims all seek the same relief as their Second Amendment claim, all section 1983 claims should be dismissed because they are duplicative of Plaintiffs' Second Amendment claim, Plaintiffs contend Defendants are "[p]racticing by headnote." [Document 21, p. 12].[6] Rather than addressing the merits of Defendants' argument, Plaintiffs do not cite any cases supporting their position but simply state that "Defendants rely on a series of out-of-state district court opinions, none of which is helpful." *Id*. These cases are certainly not helpful to Plaintiffs as they accurately state the law.

Plaintiffs' Complaint seeks the exact same relief in their Second Amendment claim as they do on their Section 1983 claims. [Document 1, ¶¶ 104-126] As the

---

[6] Undersigned counsel is unsure whether this is intended as a compliment, an insult, an observation, or both, because counsel has never been accused of this before.

9

United States Supreme Court stated in *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Therefore, Plaintiffs have no substantive due process claim.

They also have no other section 1983 claims because they are redundant as demonstrated by yet another out of state opinion. *See Rhode v. Becerra*, 342 F. Supp. 3d 1010, 1016 (S.D. Cal. 2018) (dismissing Plaintiffs' Equal Protection Clause claim which sought to invalidate California statute which allows non-residents, but not California residents, to bring ammunition directly into California because it "is no more than a Second Amendment claim dressed in equal protection clothing, it is subsumed by, and coextensive with the former, and therefore not cognizable under the Equal Protection Clause" and "Plaintiffs' claim is primarily a Second Amendment claim….which may be addressed in Plaintiffs' other claims for relief alleging violations of Second Amendment rights.").

## IV. PLAINTIFFS' EQUAL PROTECTION CLAIM SHOULD BE DISMISSED

In addition to being subject to dismissal because it seeks the same relief as their Second Amendment claim, Plaintiff's Equal Protection Claim should be dismissed because Plaintiffs have not properly alleged facts supporting it. "While

legal conclusions can provide the framework of the complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50 (2009). To survive a motion to dismiss, a plaintiff's complaint must allege "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. at 678, 129 S.Ct. at 1949. As the *Iqbal* Court stated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* (internal citation omitted). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678, 129 S.Ct. at 1949-1950. While the court may accept factual allegations in a complaint as true and considers those facts in the light most favorable to the plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Market Incorporated v. J.V. Associates, LP*, 213 F.3d 175, 180 (4th Cir. 2000).

Plaintiffs again contend that this claim should not be dismissed because Defendants are attacking "the merits." [Document 21, p. 14.]. Defendants are simply attacking the entire claim because Plaintiffs maintain that their Equal Protection rights were violated without any factual support. As this Court is aware, motions to dismiss are often filed and granted in Equal Protection cases. *See e.g., Scarborough v. Frederick County School Board*, 517 F.Supp.2d. 569, 580 (W.D.Va.

11
WBD (US) 60660825v1

2021); *Sigma Lambda Upsilon/ Senoritas Latinas Unidas Sorority Inc. v. Rector and Visitors of the University of Virginia*, 503 F.Supp.3d 433, 451 (W.D.Va. 2020); *North Carolina Division of Sons of Confederate Veterans, Inc. v, North Carolina Department of Transportation, et. al*, 2022 WL 604173 at * 9 (M.D.N.C. 2022) (unpublished).

In order for an equal protection claim to survive a motion to dismiss, Plaintiffs must plead sufficient facts to demonstrate plausibly that they were treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus. *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011). Plaintiffs here fail to allege any facts to support this second element. To satisfy the second element of an equal protection claim, plaintiffs are required to allege facts sufficient to show that the defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Wilson v. United States*, 332 F.R.D. 505, 525 (S.D.W. Va. 2019) (internal quotation marks and citation omitted). The Complaint is void of any allegations concerning Defendants' intent to discriminate against anyone, and its failure in this regard mandates dismissal of Plaintiffs' Equal Protection claim.

## V. <u>CONCLUSION</u>

For these reasons and those set forth in Defendants' Motion, Defendants request that this Court dismiss Plaintiffs' Complaint.

WBD (US) 60660825v1

Respectfully submitted this 28TH day of February, 2023.

/s/*Sean F. Perrin*
Sean F. Perrin
N.C. State Bar No. 22253
Alexander J. Buckley
N.C. State Bar No. 53403
WOMBLE BOND DICKINSON (US) LLP
301 South College Street, Suite 3500
Charlotte, North Carolina  28202-6037

/s/*J. George Guise*
J. George Guise
N.C. State Bar No. 22090
Mecklenburg County Sheriff's Office
801 East Fourth St.
Charlotte, North Carolina  28202

*Attorneys for Defendants Sheriff Garry McFadden and Mecklenburg County Sheriff's Office*