UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-630-MOC

| | |
|---|---|
| SARA BETH WILLIAMS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| GARRY MCFADDEN, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on a Motion for Preliminary Injunction, filed by Plaintiffs Bruce Kane, Sara Beth Williams, Jason Yepko, Grass Roots North Carolina, Gun Owners Foundation, Gun Owners of America, Inc., and Rights Watch International. (Doc. No. 9). Plaintiffs have also filed a Motion for Hearing on Plaintiff's Motion for Preliminary Injunction or for Status Conference. (Doc. No. 26). Also pending is a Motion to Dismiss, filed by Defendants Garry L. McFadden and the Mecklenburg County Sheriff's Office. (Doc. No. 16). The Court held a hearing on the motions on June 22, 2023.

### I. BACKGROUND

To conceal carry a handgun in North Carolina, a person must first obtain a North Carolina Concealed Handgun permit ("CHP"). North Carolina statutes require a mental health check as a prerequisite to obtaining a CHP (hereinafter referred to as "the North Carolina mental health statutes"). In this action, Plaintiffs assert that the North Carolina mental health statutes relating to the CHP permitting process are unconstitutional on their face and as applied by

1

Mecklenburg County Sheriff McFadden's and the Mecklenburg County Sheriff's Office's ("MCSO"). (Doc. No. 1). The individual Plaintiffs are Bruce Kane, Sara Beth Williams, and Jason Yepko. The organizational Plaintiffs are Grass Roots North Carolina, Gun Owners Foundation, Gun Owners of America, Inc., and Rights Watch International. The named Defendants are Mecklenburg County Sheriff Garry L. McFadden and the Mecklenburg County Sheriff's Office.

Plaintiffs have asserted the following causes of action against Defendants: Count I: Violation of the Second Amendment, id. ¶¶ 96–103; Count II: Violation of 42 U.S.C. § 1983, Second Amendment, id. at ¶¶ 104–09; Count III: Violation of 42 U.S.C. § 1983, Fourteenth Amendment Due Process, id. at ¶¶ 110–16; and Count IV: Violation of 42 U.S.C. § 1983, Fourteenth Amendment Equal Protection, id. at ¶¶ 117–26. Plaintiffs also seek an injunction against Sheriff McFadden "from impermissibly delaying the processing and issuance of concealed handgun permits." (Doc. No. 1, p. 37).

Since the filing of the Complaint, the three individual Plaintiffs have received their CHP permits. Williams' application for a CHP was completed on February 23, 2022 (Doc. No. 1, p. 5), and after receipt of her mental health records, her permit was approved on November 18, 2022. (Doc. No. 14-2, p. 5).[1] Kane sought renewal of his CHP on July 11, 2022 (Doc. No. 1, p. 5), and his renewal application was approved on January 6, 2023. (Doc. No. 14-2, p. 5). Yepko sought renewal of his CHP in October 2021, filled out the proper forms by March 2022 (Doc. No. 1, p. 5), and his renewal application was approved on November 16, 2022. (Doc. No. 14-2,

---

[1] As Defendants are moving to dismiss this Complaint for lack of subject matter jurisdiction, this Court may consider evidence outside the pleadings. Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004).

p. 5).

In opposing the motion for preliminary injunction and in support of the motion to dismiss, Defendants first argue that because the three individual Plaintiffs have received their CHP permits, the motion for preliminary injunction has been rendered moot. Defendants also argue that Plaintiffs various constitutional challenges to the North Carolina statutes fail because the statutes are constitutional on their face and as applied by Sheriff McFadden and the Mecklenburg County Sheriff's Office.

## II.     STANDARD OF REVIEW

Defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

First, under Rule 12(b)(1), the defendant may file a motion to dismiss based on a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Where a defendant files such motion, the plaintiff bears the burden to prove that subject matter jurisdiction exists. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Additionally, a motion to dismiss for lack of subject matter jurisdiction may be brought on the grounds that the complaint fails to allege sufficient facts to invoke the court's jurisdiction and, when made on those grounds, all the facts asserted in the complaint are presumed to be true. Id.

In reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must

3

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### III. DISCUSSION

#### A. THE NORTH CAROLINA STATUTORY SCHEME

Any person in North Carolina with a valid CHP issued by his or her local Sheriff may carry a concealed handgun. N.C. GEN. STAT. § 14-415.11 Defendant Sheriff McFadden, like all North Carolina sheriffs, is responsible for administering the gun-permitting process, including applications for CHPs. See N.C. GEN. STAT. §§ 14-402- 415.27. North Carolina is a "shall issue" state, meaning that Defendants do not have discretion to deny a CHP if the CHP applicant meets certain criteria. N.C. GEN. STAT. § 14-415.12.

An applicant must submit an application,[2] a nonrefundable permit fee of $90.00, a fee of $10.00 for fingerprinting (and submit to fingerprinting by the Sheriff), a certificate of completion of an approved course for handgun competency, and a release authorizing disclosure of any records concerning the "mental health or capacity"[3] of the applicant to determine whether s/he is disqualified from receiving a permit under N.C. GEN. STAT. § 14-415.12(a)(3). N.C. GEN. STAT. § 14-415.13(a)(5).

---

[2] This application is created by the North Carolina State Bureau of Investigation. (Doc. No. 14-2, p. 3; Doc. No. 14-3, pp. 2–4).
[3] (Doc. No. 14-2, p. 3; Doc. No. 14-4, p. 2).

After the applicant submits the items listed in N.C. GEN. STAT. § 14-415.13, the Sheriff is authorized to "conduct any investigation necessary to determine the qualification or competency of the person applying for the permit." N.C. GEN. STAT. § 14-415.15(a). Within ten days of the receipt of the items listed in N.C. GEN. STAT. § 14-415.13, the "sheriff shall make the request for any records concerning the mental health or capacity of the applicant." N.C. GEN. STAT. § 14-415.15(a). N.C. GEN. STAT. § 14-415.15(a) further provides that "within 45 days of the receipt of the items listed in G.S. 14-415.13 from an applicant, and receipt of the required records concerning the mental health or capacity of the applicant, the sheriff shall either issue or deny the permit." N.C. GEN. STAT. § 14-415.15(a).

Plaintiffs assert that the portions of N.C. GEN. STAT. § 14-415.13 through N.C. GEN. STAT. § 14-415.15 that are unconstitutional are N.C. GEN. STAT. §§ 14-415.13(a)(5), and 14-415.15(a). (Doc. No. 21, p. 2). Plaintiffs concede the constitutionality of N.C. GEN. STAT. § 14-415.12(a)(3), which requires North Carolina Sheriffs to determine that an "applicant does not suffer from a physical or mental infirmity that prevents the safe handling of a handgun." As noted, the challenged statutes, N.C. GEN. STAT. §§ 14-415.13(a)(5) and 14-415.15(a), require an individual to sign a release authorizing disclosure to the Sheriff of "any records concerning the mental health or capacity of the applicant" to determine if the applicant is disqualified under N.C. GEN. STAT. § 14-415.12 (N.C. GEN. STAT. § 14-415.13(a)(5)), and allow the Sheriff to request these records within ten days, and require that the Sheriff either issue or deny the permit within forty-five days after receipt of these records. (N.C. GEN. STAT. § 14-415.15(a)).

In their facial challenge to the North Carolina statutes, Plaintiffs contend that N.C. GEN. STAT. § 14-415.15(a) allows the Sheriff "vast and open-ended discretion" in requesting mental health records. (Doc. No. 21, p. 10). Defendant Sheriff McFadden responds that he does not

5

request mental health records from every mental health provider in Mecklenburg County. He requests mental health records from seven mental health providers because he believes that the majority of Mecklenburg County residents who seek mental health treatment do so through one of those providers. (Doc. No. 14-2, ¶¶ 7–9). Defendant McFadden further contends that once he requests an applicant's mental health records, control of the process shifts to the mental health providers while Defendant McFadden waits for production of the records. Defendant McFadden further asserts that he cannot control how long it may take any given mental health provider to return the requested records. He contends that as long as he issues or denies the CHP within forty-five days of receiving those records, he has complied with the law. N.C. GEN. STAT. § 14-415.15(a).

i. **MOTION TO DISMISS BY THE MECKLENBURG COUNTY SHERIFF'S OFFICE**

The Court first addresses the motion to dismiss the Mecklenburg County Sheriff's Office. In North Carolina, it is well established that "unless a statute provides to the contrary, only persons in being may be sued." Coleman v. Cooper, 89 N. C. App. 188, 192 (1988) (a police department is a non-suable entity given the absence of any statute "authorizing suit against the police department"). There is no statute authorizing suit against a county Sheriff's Office, and therefore Plaintiffs cannot proceed against the Mecklenburg County Sheriff's Office. Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008) (holding that the Bladen County Sheriff's Office is a non-suable entity); Efird v. Riley, 342 F. Supp. 2d 413, 420 (W.D.N.C. 2004) (dismissing claims against county sheriff's department for lack of capacity to be sued); Landry v. State of North Carolina, No. 3:20cv585, 2011 WL 3682788, at *2 (W.D.N.C. Aug. 23, 2011) (unpublished) (holding that the Mecklenburg County Sheriff's Office is not a legal entity

6

capable of being sued). Therefore, the Mecklenburg County Sheriff's Office is dismissed as a Defendant.

### ii. DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FACIAL CHALLENGE TO THE NORTH CAROLINA STATUTES

The Court finds that, to the extent Plaintiffs make a facial challenge to the North Carolina mental health statues, Plaintiffs' Second Amendment and other constitutional claims have no merit. Plaintiffs' due process and equal protection claims are subject to dismissal because they are duplicative of Plaintiffs' Second Amendment claim. See Clifton v. United States Dep't of Justice, No. 1:21cv89, 2022 WL 2791355, at *13 (E.D. Cal. July 15, 2022) (dismissing the plaintiff's substantive due process claim where the plaintiff sought the same relief for his Second Amendment and substantive due process claims); Marszalek v. Kelly, No. 20-cv-4270, 2022 WL 225882, at *7 (N.D. Ill. Jan. 26, 2022) ("The alleged deprivation of Plaintiffs' right to possess and use firearms due to Defendants' processing delays clearly implicates the rights conferred by the Second Amendment, and thus, this Court dismisses Plaintiffs' substantive due process theory as duplicative of their Second Amendment claim."); Johnson v. Lyon, 406 F. Supp. 3d 651, 671 (W.D. Mich. 2018) (holding that despite the plaintiff's attempts to bring a due process claim, allegations that the State violated the plaintiff's right to armed self-defense must be assessed under the Second Amendment, not the Fourteenth Amendment); Clark v. City of Shawnee, 228 F. Supp. 3d 1210, 1223 (D. Kan. 2017) (rejecting the plaintiff's due process claim that a city's firearm licensing process burdened him because the claim was "no more than an indirect and duplicative Second Amendment challenge"); Second Amend. Arms v. City of Chicago, 135 F. Supp. 3d 743, 763 (N.D. Ill. 2015) (analyzing the plaintiff's claims that an ordinance impaired his fundamental right to sell firearms through retail sales, and to display those firearms and

ammunition for sale, under the First and Second Amendments, rather than under the due process clause of the Fourteenth Amendment).

Furthermore, specifically as to Plaintiffs' Section 1983 Equal Protection claim, this claim is premised on the argument that the North Carolina mental health statutes "have been enforced with significant inequality across various North Carolina counties" and "law-abiding residents of some counties" are treated differently as a result. (Doc. No. 1, ¶¶ 119–20). These allegations do not state an Equal Protection claim. To succeed on an Equal Protection claim under Section 1983, Plaintiffs must show that they have been treated differently from others with whom they are similarly situated and that the unequal treatment was the result of intentional discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Courts have routinely rejected claims that procedures used by different counties within a state violate the Equal Protection rights of citizens. See Wexler v. Anderson, 452 F.3d 1226, 1231–33 (11th Cir. 2006) (recognizing that equal protection is not violated by letting different counties use different voting systems); Donald J. Trump for President, Inc. v. Boockvar, 493 F. Supp. 3d 331, 407 (W.D. Penn. 2022) (rejecting Equal Protection claim in voting case alleging that some counties did not verify signatures on ballots where voters were allegedly treated differently simply based on county of residence). Moreover, Plaintiffs do not allege, as they must, that they were treated differently than other claimants based on constitutionally impermissible criteria. Tri-County Paving, Inc., v. Ashe Cnty., 281 F.3d 430, 439–40 (4th Cir. 2002) (where the county's decision to deny plaintiff's application to operate asphalt plant was not based on race or another protected factor, the equal protection claim was properly dismissed).

In sum, for these reasons, because the Court is dismissing Plaintiffs' due process and equal protection claims, in discussing Plaintiffs' facial challenge to the constitutionality of the

8

North Carolina mental statutes, the Court will hereafter refer to Plaintiffs' claims as Second Amendment claims.

To succeed in a facial constitutional challenge, Plaintiffs "must establish that no set of circumstances exists under which the Act would be valid." United States v. Hosford, 843 F.3d 161, 165 (4th Cir. 2016) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). The statutes that Plaintiffs claim violate the Second Amendment are (1) the provision in N.C. GEN. STAT. § 14-415.13(a)(5), which requires a release authorizing disclosure of any records concerning the "mental health or capacity" of the applicant to determine whether s/he is disqualified from receiving a permit under N.C. GEN. STAT. § 14-415.12(a)(3); and (2) the provision in N.C. GEN. STAT. § 14-415.15(a), which requires the Sheriff to make "the request for any records concerning the mental health or capacity of an applicant."

The Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen mandates dismissal of a facial challenge to the North Carolina mental health statutes at issue. 142 S. Ct. 2111, 2122 (2022). In Bruen, the Supreme Court struck down New York State's "proper cause" statute for concealed carry permits. In so doing, the Supreme Court held that "[t]o justify its regulation [of firearms], the government may not simply posit that the regulation promotes an important interest. Rather the government must demonstrate that the regulation is consistent with this Nation's historical treatment of firearm regulation." Id. at 2126. The question before this Court, then, is whether the North Carolina mental health statutes at issue are consistent with this Nation's historical treatment of firearm regulation. The Court concludes that they are.

In District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court held that while the Second Amendment conferred upon an individual the right to keep and bear arms in the home, it emphasized that nothing in its opinion "should be taken to cast doubt on

9

longstanding prohibitions on the possession of firearms by felons and the mentally ill." Id. at

626. Following Heller, in McDonald v. Chicago, the Supreme Court reaffirmed that legislation

prohibiting mentally ill individuals from carrying firearms was constitutional:

> We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at 626 – 627, 128 S.Ct., at 2816–2817. We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.

561 U.S. 742, 786 (2010). Then, in Bruen, the Supreme Court reinforced the notion that it is

constitutionally permissible for legislation to require a determination of whether someone is

mentally capable of handling a firearm. 142 S. Ct. at 2138 n.9 (stating that "nothing in our

analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall- issue"

licensing schemes…."[4] Specifically, Justice Kavanaugh stated in the concurring opinion, in

which Chief Justice Roberts joined, that "[n]othing in [the Court's] opinion should be taken to

cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally

ill...." Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Justice Kavanaugh also stated

"shall-issue regimes" that "do not grant open-ended discretion to licensing officials and do not

require a showing of some special need apart from self-defense" are "constitutionally

permissible," even if they require an individual to "undergo fingerprinting, a background check,

a mental health records check, and training in firearms handling and in laws regarding the use of

force, among other possible requirements." Id. at 2162 (Kavanaugh, J., concurring).

Here, the North Carolina mental health statutes simply require every Sheriff's Office to

---

[4] As discussed above, North Carolina is a "shall-issue" state. N.C. GEN. STAT. § 14-415.12.

10

determine whether someone is mentally ill and thus cannot safely handle a handgun, a proposition which the Supreme Court has repeatedly recognized is consistent with this country's historical tradition. See, e.g., Doe v. Bonta, No. 22-cv-10, 2023 WL 187574, at *5 (S.D. Cal. Jan. 12, 2023) (reiterating that Bruen "didn't undo all preexisting gun regulations" and that "[l]icensing requirements, fingerprinting, background checks, and mandatory gun safety training courses" are legitimate and common regulations). Moreover, the statutes' plain language, on its own, does not create unreasonable waiting times for obtaining permits. For these reasons, the Court finds that the challenged North Carolina mental health statutes do not, on their face, violate the Second Amendment, or any other federal Constitutional provision.

### iii. DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AS-APPLIED CHALLENGE TO THE NORTH CAROLINA STATUTES

Next, as to Plaintiffs' as-applied challenge to the North Carolina statutes, Plaintiffs "must show that the regulations are unconstitutional as applied to their particular . . . activity." Edwards v. Dist. of Columbia, 755 F.3d 996, 1001 (D.C. Cir. 2014). The substantive rule of law is the same for both a facial and as-applied challenge. Id. In making their as-applied challenge, Plaintiffs rely on the final sentence of footnote 9 in Bruen, which states that "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." 142 S. Ct. at 2138 n.9.

Here, the Court will reserve ruling on Plaintiff's as-applied challenge to the North Carolina statutes at issue. That is, the Court will allow the parties to conduct discovery to determine whether, in applying the statutes, the Sheriff's practices have resulted in "lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to

[obtain permits]." 142 S. Ct. at 2138 n.9. Once the parties have conducted discovery on this issue, the parties may renew their arguments through summary judgment motions.

### B. PLAINTIFFS' PRELIMINARY INJUNCTION MOTION

Here, in opposing Plaintiffs' preliminary injunction motion, Defendants argue that the individual Plaintiffs' claims for injunctive relief are moot because they have by now received their CHP permits. The Court agrees and further finds that a preliminary injunction is not warranted.

The concept of mootness is rooted in Article III of the United States Constitution, which limits the jurisdiction of the federal courts to "cases and controversies." U.S. Const., Art. III, § 2. To avoid mootness, Plaintiffs must demonstrate that: (1) they have suffered an injury in fact that is concrete, particularized, and imminent; (2) that injury is fairly traceable to, or caused by, the challenged action of defendants; and (3) it is likely, rather than conjectural, that the injury will be redressed by a favorable decision. See generally Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000). Plaintiffs whose claims are moot lack standing, and those moot claims should therefore be dismissed for lack of subject matter jurisdiction. Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (citations omitted), or, in other words, when the court's "resolution of an issue could not possibly have any practical effect on the outcome of the matter." Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 161 (4th Cir. 2010). A claim for injunctive relief is moot "when there is no effective relief available in federal court that the plaintiff has not already received." SAS Inst., Inc. v. World Programming Ltd., 874 F.3d 370, 389 (4th Cir. 2017) (quotations omitted).

12

Here, the individual Plaintiffs' injunctive relief claims are moot because they have already obtained their CHPs. SAS Inst., Inc., 874 F.3d at 389 ("A claim for injunctive relief is moot when there is no effective relief available in federal court that the plaintiff has not already received"). Because the individual Plaintiffs lack standing to bring their injunctive relief claim, the organizational Plaintiffs' injunctive relief claim must also be dismissed without prejudice for lack of jurisdiction.[5] Accord Stafford v. Baker, 520 F. Supp. 3d 803, 813 (E.D.N.C. 2021) (in a Second Amendment case on similar facts, where the individual plaintiffs received their pistol purchase permits after the lawsuit was filed, dismissing the injunctive relief claims by both the individual and organizational plaintiffs, noting that because the individual plaintiffs' claims were moot, the organizational plaintiffs lacked standing to sue).

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS in PART and DENIES in PART** Defendants' motion to dismiss. Specifically, the Court dismisses the Mecklenburg County Sheriff's Office as a Defendant because it is a non-suable entity. The Court also dismisses Plaintiffs' due process and equal protection claims because they are duplicative of Plaintiffs' Second Amendment claim. The Court further finds that Plaintiffs fail to state a claim as to a facial challenge to the North Carolina mental health statutes. However, the Court reserves ruling as to Plaintiffs' as-applied challenge. This means that the sole remaining claim is a Second Amendment claim against Sheriff McFadden, based solely on the statutes as applied.

Finally, the Court will **DENY** Plaintiffs' preliminary injunction motion.

**IT IS, THEREFORE, ORDERED** that:

---

[5] To the extent that Plaintiffs argue that the "capable of evading review" exception to the mootness doctrine applies, the Court disagrees that this exception applies.

(1) The Motion for Preliminary Injunction, filed by Plaintiffs Grass Roots North Carolina, Gun Owners Foundation, Gun Owners of America, Inc., Bruce Kane, Rights Watch International, Sara Beth Williams, and Jason Yepko, (Doc. No. 9), is **DENIED**.

(2) Plaintiff's Motion for Preliminary Injunction or for Status Conference, (Doc. No. 26), is **TERMINATED** as **MOOT**.

(3) The Motion to Dismiss, filed by Defendants Garry L. McFadden and the Mecklenburg County Sheriff's Office, (Doc. No. 16), is **GRANTED in PART and DENIED in PART.** That is, the Court grants Defendants' motion to dismiss Plaintiffs' facial challenge to the North Carolina mental health statutes. The Court denies Defendants' motion to dismiss Plaintiffs' as-applied challenge. The Court will allow discovery to proceed and will reserve a ruling on the as-applied challenge until after the parties have engaged in discovery. Furthermore, Plaintiffs' due process and equal protection claims are dismissed. The sole remaining claim is Plaintiffs' Second Amendment claim, and the sole remaining Defendant is Sheriff McFadden.

Signed: July 31, 2023

*Max O. Cogburn Jr*
United States District Judge